Case No.:

---

*In the*

# UNITED STATES DISTRICT COURT

*for the*

# WESTERN DISTRICT OF MICHIGAN

---

Honorable:

BARRY MEHLER,

     Plaintiff,

                        v.

FERRIS STATE UNIVERSITY; DAVID L. EISLER, Individually and in his Official Capacity as the President of Ferris State University; RANDY CAGLE, Individually and in his Official Capacity as the Dean of Ferris State University's College of Arts, Sciences and Education; Ferris State University's BOARD OF TRUSTEES; and Amna P. Seibold, Anna L. Ramirez-Saenz, Rupesh K. Srivastava, LaShanda R. Thomas, George K Heartwell, Kurt A. Hofman, and Ronald E. Snead, in their Official Capacities as the Trustees of Ferris State University's Board of Trustees,

     Defendants.

---

### JURY DEMAND

---

### PLAINTIFF'S VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF; DAMAGES; AND FURTHER INJUNCTIVE RELIEF

---

COMES NOW Barry Mehler, and for his Complaint hereby states the following:

## INTRODUCTION

1.    This is a civil action wherein Plaintiff Professor Barry Mehler, Ph.D. seeks an immediate, emergency, Temporary Restraining Order, and further injunctive relief, to restrain Defendants from violating his First and Fourteenth Amendment rights, including his academic freedom, by summarily removing him

1

from instructing his classes at Ferris State University ("FSU" or the "University"), removing his faculty page from the University website, banning him from campus, prohibiting him from speaking with current or former students or faculty, and otherwise retaliating against him for criticizing the University's COVID-19 policies.

2.     Dr. Mehler is a distinguished, tenured professor who has served as an instructor at FSU for over 30 years. On January 9, 2021, Dr. Mehler shared videos with his students for the term, via private URL, introducing them to him and his classes. One such video portrayed Dr. Mehler's well-known and celebrated provocative style and included criticism of the University's COVID-19 policy along with his long-standing bits used to draw students' attention to plagiarism and his grading policy. The video went "viral" and, when it came to the University administrators' attention, they took the above-described actions against Dr. Mehler to silence his criticism.  Dr. Mehler now seeks emergency injunctive relief to return him to his students and further seeks money damages and attorney fees against the individuals responsible for trampling his fundamental First and Fourteenth Amendment rights.

## JURISDICTION AND VENUE

3.     Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented here by virtue of 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4).

4.     The prayer for declaratory relief is founded in part on Rule 57 of the Federal Rules of Civil Procedure as well as in 28 U.S.C. § 2201, the latter of which provides that:

> . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . .

5.      Jurisdiction to hear Plaintiff's state law claims is conferred upon this Court pursuant to this Court's supplemental pursuant to 28 U.S.C. § 1367 as such claims share a common nucleus of operate facts such that they form part of the same case or controversy as Plaintiff's claims that invoke this Court's original jurisdiction.

6.      The statutory law which further authorizes the institution of this suit, and in particular the damage claims asserted herein, is 42 U.S.C. § 1983 which provides, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, or any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

7.      Jurisdiction of this Court to grant injunctive relief is conferred upon this Court by Rule 65 of the Federal Rules of Civil Procedure, and by 28 U.S.C. § 2202, the latter of which provides: "Further necessary or proper relief on a declaratory judgment or decree may be granted after reasonable notice and hearing, against any adverse party whose right shave been determined by such judgment."

8.      Federal question jurisdiction for the request for attorney fees and costs is conferred by 42 U.S.C. § 1988.

9.      No other action, civil or criminal, is pending in any state court involving the Plaintiff regarding the activities and events here.

10.     This suit is authorized by law to redress deprivations of rights, privileges, and immunities secured by the First and Fourteenth Amendments to the United States Constitution, and for declaratory and injunctive relief.

11.     Pursuant to 28 U.S.C. § 1391(e), venue in this Court is appropriate as both Plaintiff and Defendants are located and reside within the Western District of

Michigan, and the injury complained of and acts causing that injury have occurred and will continue to occur in the Western District of Michigan.

12.     The Agreement between the Board of Trustees of Ferris State University and the Ferris Faculty Association (the "CBA") does not preclude brining a Civil Rights Act claim directly in this court. <u>McDonald v. City of W. Branch, Mich.</u>, 466 U.S. 284 (1984).

**PARTIES**

*Plaintiff*

13.     Plaintiff Dr. Barry Mehler ("Plaintiff" or "Dr. Mehler") is an adult resident of the State of Michigan.

*Defendants*

14.     Defendant Ferris State University (again, "FSU" or the "University") is public university owned and operated by the State of Michigan pursuant to MCL 390.801 et. seq. FSU is located at 1201 S. State Street in Big Rapids, Michigan.

15.     Defendant David L. Eisler ("Eisler") is the President of FSU. Eisler has the power to, among other things, initiate an investigation into Dr. Mehler, suspend Dr. Mehler from campus, and remove Dr. Mehler's Canvas class and faculty pages. Defendant Eisler is sued in both his Individual and his official capacity.

16.     Upon information and belief, Defendant Eisler is an adult resident of the State of Michigan.

17.     Defendant Randy Cagle ("Cagle") is the Dean of FSU's College of Arts, Sciences, and Education. Cagle has the power to, among other things, initiate an investigation into Dr. Mehler, suspend Dr. Mehler from campus, and remove Dr. Mehler's Canvas class and faculty pages. Defendant Cagle is sued in both his individual and his official capacity.

18.     Upon information and belief, Defendant Cagle is an adult resident of the State of Michigan.

19. Defendants Eisler and Cagle are employees of FSU and act on FSU's behalf.

20. Defendant Board of Trustees ("Board") is the Board of Trustees of FSU. Board has the power and authority to, among other things, govern and supervise FSU, control and direct FSU expenditures, launch an investigation into Dr. Mehler, suspend Dr. Mehler from campus, and remove Dr. Mehler's Canvas class and faculty pages. Defendant Board resides at 1201 S. State Street, CSS 301F in Big Rapids, Michigan.

21. Defendants Amna P. Seibold, Anna L. Ramirez-Saenz, Rupesh K. Srivastava, LaShanda R. Thomas, George K Heartwell, Kurt A. Hofman, and Ronald E. Snead (collectively, the "Trustees") are the Trustees of FSU. Trustees have the power and authority to, among other things, govern and supervise FSU, control and direct FSU expenditures, investigation into Dr. Mehler, suspend Dr. Mehler from campus, and remove Dr. Mehler's Canvas class and faculty pages.

22. Upon information and belief, Defendant Siebold is an adult resident of East Grand Rapids, Michigan and is sued in her official capacity as an FSU Trustee only.

23. Defendant Ramirez-Saenz is an adult resident of the Village of Caledonia, Michigan and is sued in her official capacity as an FSU Trustee only.

24. Defendant Srivastava is an adult resident of the City of Wixom, Michigan and is sued in his official capacity as an FSU Trustee only.

25. Defendant Thomas is an adult resident of the City of Grosse Pointe, Michigan and is sued in her official capacity as an FSU Trustee only.

26. Upon information and belief, Defendant Heartwell is an adult resident of the State of Michigan and is sued in his official capacity as an FSU Trustee only.

27. Defendant Hofman is an adult resident of the City of Grand Rapids, Michigan and is sued in his official capacity as an FSU Trustee only.

28.     Upon information and belief, Defendant Snead is an adult resident of the State of Michigan and is sued in his official capacity as an FSU Trustee only.

## RELEVANT BACKGROUND INFORMATION

### *Dr. Mehler's Academic History*

29.     In 1970, Dr. Mehler graduated from the Yeshiva University in New York with a Bachelor of Arts in History.

30.     In 1972, Dr. Mehler graduated from the City College of New York with a Master of Arts degree in Labor History.

31.     Dr. Mehler earned his Ph.D in the fields of History of Racism; Behavior-Genetic Analysis; and History of Science in 1988 from the University of Illinois at Champaign-Urbana.

32.     Dr. Mehler's teaching career began in 1977 as a History instructor at Washington University in St. Louis, Missouri. He was a National Science Foundation Fellow Research Associate in the History of Science department of Washington University from 1976 through 1980.

33.     In 1981, Dr. Mehler transferred to the University of Illinois where he was a National Institute of Mental Health Trainee in the Program for the Study of Institutional Racism. From 1986 through 1988, Dr. Mehler worked on the University of Illinois' IBM Excel Project where he designed programs in historical demography and supercomputer applications for the social sciences.

34.     Dr. Mehler began his tenure at FSU in 1988 as an Instructor in the Department of Humanities. In 1990, he became an Assistant Professor and in 1994 he earned tenure as an Associate Professor. Dr. Mehler became a Professor in 1999.

35.     Dr. Mehler is a tenured professor at FSU.

36.     Dr. Mehler's Curriculum Vitae detailing his distinguished academic career, courses taught, research interests, professional activities, and publications is

attached hereto as **Exhibit A** and is hereby incorporated by reference as though fully set forth herein.

### *Dr. Mehler's Pedagogy*

37.    Dr. Mehler is well known for his teaching philosophy of "Thinking History vs Teaching History." Over the course of his tenure at FSU, Dr. Mehler has developed a unique pedagogy where his courses are designed as a TV variety show.

38.    He is well known for "The Show," previously entitled, "Sympathy for the Devil" and more recently, "More Bad News," both brought to you by Camel Cigarettes.

39.    It has been a staple of all Dr. Mehler's classes for at least two decades that his students are required to submit weekly journals reflecting on their experience in the class.

40.    The Show has been well received by Dr. Mehler's students and Dr. Mehler has continued to refine The Show based on the feedback he received from students, including in their journals.

41.    Dr. Mehler's proactive teaching style and The Show, including his use of profanity, is well known to FSU and cherished by its students, has been brought to FSU's attention on multiple occasions and has been celebrated beyond just Dr. Mehler's classroom.

42.    In 2014, Dr. Mehler applied for a merit based promotion. In his essay in support of the promotion, which is attached hereto as **Exhibit B** and is hereby incorporated by reference as though fully set forth herein, Dr. Mehler explains The Show and his use of The Show to stimulate and engage his students.

43.    At Dr. Mehler's request, Prof. Gary Huey wrote a letter in support of the merit increase. That letter explains:

> Barry is trying a very different approach to his teaching. His emphasis is on provoking thinking in his students. The methods he employs may not be everyone's cup of tea, but I know from talking to student that those who "get it," and most do by the end of the semester, enjoyed the experience and they do learn to think.

44.    A copy of Prof. Gary Huey's letter in support is attached hereto as **Exhibit C** and is hereby incorporated by reference as though fully set forth herein.

45.    FSU granted Dr. Mehler's 2014 application for a merit increase.

46.    Also in approximately 2014, Dr. Mehler brought The Show beyond his classroom and to FSU at large. On April 4, 2014, on FSU's campus, Dr. Mehler presented a "Passion for the Past" series sponsored by FSU's Honors Program. A copy of this series' filer is attached hereto as **Exhibit D** and is hereby incorporated by reference as though fully set forth herein.

47.    In 2015, Dr. Mehler was nominated for a Distinguished Teaching Award.  A true and accurate copy of his "Consent to Nominate" is attached hereto as **Exhibit E**, which is hereby incorporated by reference as though fully set forth herein.

48.    In the Consent to Nominate, Dr. Mehler explains his pedagogy the following statement regarding The Show:

> My teaching techniques are totally original.  Two days before the new semester started this Fall, I sent all my students an email welcoming them to the new season of my show, "Sympathy for the Devil." The attachment was headed: "WARNING," in inch high bold red print. Below the student reads:
>
>> Dr. Mehler's show, "Sympathy for the Devil," is rated NC-17 – NOT FOR CHILDREN, CHILDREN NOT ADMITTED.  The show contains gratuitous violence, lots of profanity and all kinds of perversions.  The show is about American history and therefore contains insulting depictions of virtually every racial, ethnic and religious group. If profanity offends you or you do not want to have your values challenged, please do not take this class.  This is Satan's show and no respect is show to prophets or saints of any description.
>
> My courses are all designed as a TV variety show entitled, "Sympathy for the Devil." The idea is to present the course material in an unusual way which takes the students out of the normal classroom environment and transports them onto the set of a TV show, where the rules of the game are all new and strange. None of this is explained.  The medium is the message. Many students have reported in their initial journals, a

8

collective experience of bewilderment, often expressed as, "Am I in the right room? This can't be a history class?"

49.    The Notice of Consent further states: "And then I explain my grading system, which is based on the Calvinist doctrine of predestation.  I tell them that just as Calvin believed salvation was entirely the result of God's grace, grades in this class have already been assigned and have nothing to do with your effort." **Ex. E**, at p. 2.

50.    The Notice of Consent continues: "I, also think watching Deadwood really helped me improve my use of profanity and my understanding of its importance in American history. Americas were generally more profane than Europeans." **Ex. E**, at p.3.

51.    In approximately 2016, the then Dean of the College of Arts, Sciences, and Education, Dr. Kristi L. Haik, along with her assistant and interim Dean, Trinidy Williams, sat in on Dr. Mehler's introductory course session. That session included the use of a *Deadwood* scene as an illustration of plagiarism, complete with profanity and all, as discussed, *infra*.

52.    Thereafter, Dr. Haik gave Dr. Mehler a hug and told him how wonderful The Show was and exclaimed that she wished she had an instructor like Dr. Mehler when she was in school.

53.    Also in 2016, Dr. Mehler was again nominated for a Distinguished Teaching Award. Members of the Award Selection Committee individually attended a number of Dr. Mehler's lectures, all of which included The Show. The Award Selection Committee placed Dr. Mehler as a finalist for the award; however, the award that year was ultimately given to Prof. John Scott Gray, Ph.D.

54.    A copy of the Award Selection Committee's letter informing Dr. Mehler he was a finalist is attached hereto as **Exhibit F**, which is hereby incorporated by reference as though fully set forth herein.

55.    For at least a decade, Dr. Mehler's has introduced his classes by telling his student that their grades have been already been assigned in accordance with Calvinistic predestination, while his actual grading criteria is clearly set forth in the class syllabus.

56.    For at least a decade, Dr. Mehler has used a *Deadwood*-inspired soliloquy, including a line to the effect: "No limbered-dick cocksucker of an administrator is going to tell me how to teach my classes, because I'm a fucking tenured professor."

### Dr. Mehler's Contributions to FSU

57.    In 1994, Dr. Mehler, along with two other individuals, began experimenting with undergraduate education, which led to the development of FSU's Structured Learning Assistance Program ("SLA").

58.    SLA is mandatory for FSU students in SLA designated classes receiving under a 75% grade. Students can choose a section that does not have SLA, but SLA's fill first. The program mandates attendance at four hours of weekly workshops that improve study skills and promote mastery of course content. The program's goal is to target students at high-risk-for failure in gateway courses and assist them in developing the necessary tools to succeed at FSU. The program is also optional for any student and continues to upper-level courses where it encourages collaborative learning.

59.    Dr. Mehler was instrumental in developing the SLA for FSU.

60.    As a result of Dr. Mehler's work in developing and implementing the SLA at FSU, FSU benefited from the recognition the SLA received.

61.    In 2000, in recognition of the SLA program, FSU was selected as the Hesburgh Award winner. The Hesbaugh Award is sponsored by the Teachers Insurance and Annuity Association College Retirement Equities Fund and the American Council on Education. Hesbaurgh Awardees receive national publicity,

which includes a listing in the following years' Best Colleges issue of the *U.S. News and World Report*. *See* https://en.wikipedia.org/wiki/Hesburgh_Award#:~:text=The%20Hesburgh%20Award%20is%20an,and%20CREF%20Boards%20of%20Overseers. (last visited Jan. 24, 2022).

62.     In June of 2015, Dr. Mehler began working on what became the Shoah Archive Project a/k/a the Shoah Visual History Project.

63.     In the fall of 2017, Dr. Mehler rolled out the project for FSU. This project includes access to the University of Southern California's Foundation Visual History Archive making FSU only the third institution in Michigan and 53rd in the world to have access to a fully-streaming video collection of more than 54,000 primary source testimonies of survivors and witnesses of the Holocaust and other crimes against humanity. A news release from FSU's website regarding this acquisition is available here:   https://www.ferris.edu/HTMLS/news/archive/2017/march/shoah.htm   (last visited Jan. 25, 2022).

64.     Dr. Mehler's rollout of this program at FSU included a week long training program for approximately 15 faculty members conducted by Dr. Mehler as well as two experts from the Shoah Archive and several other professionals.

65.     Dr. Mehler then ran two Faculty Learning and Teaching Center programs, one after the other, each approximately six to eight weeks long.

66.     The purpose of the Shoah Archive Project was to incorporate genocide studies across the curriculum and into as many courses as possible. Dr. Mehler engaged with the Criminal Justice Program, Social Work Program, College of Education, the International Studies Office, and the College of Arts and Sciences. Dr. Mehler also designed a curriculum for FSU's upper level math class as well as for the introductory Business orientation classes that incorporated the Shoah Archive Project.

67.     In further support of this program, Dr. Mehler donated $500 towards a special fund set up in conjunction with FSU as part of FSU's foundation funds.

68.     Dr. Mehler trained his replacement who took over the program in the fall of 2021.

69.     Dr. Mehler remains on the Shoah committee and was instrumental in FSU Honors Program's February 16, 2021, webinar titled: Women, Trauma and Genocide: Sexual Violence against Women in the Holocaust. The webinar is proudly promoted on FSU Honors Program's website available here: https://ferrishonors.com/2021/02/09/women-trauma-and-genocide-webinar-series/ (last visited Jan. 25, 2022).

## GENERAL ALLEGATIONS

70.     State universities are state actors for the purposes of 42 U.S.C. § 1983. Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 192 (1988) ("A state university without question is a state actor.").

71.     FSU is a state university.

72.     Defendant Eisler, by dint of him being the President of FSU, is both (1) a person under § 1983 who (2) acts under the color of state law in relation to the acts complained of herein.

73.     Defendant Cagle, by dint of him being the Dean of FSU's College of Arts, sciences, and Education, is both (1) a person under § 1983 who (2) acts under color of state law in relation to the acts complained of herein.

74.     For the 2022 Spring Semester Term, Dr. Mehler was scheduled to instruct three courses: History 122 – History of the US 1877 to the Present (two sections); History 230 – Michigan History (two sections); and History 361 – Genocide and the Modern World (one section).

75.   Attached hereto as **Exhibit G** are the combined syllabi for Dr. Mehler's Spring 2022 Term, which is hereby incorporated by reference as though fully set forth herein.

76.   The 2022 Spring Semester Term began on January 10, 2022, and is to end on May 6, 2022.

77.   On January 9, 2022, Dr. Mehler uploaded an introductory video for the students in the five classes he was to instruct in the 2022 Spring Term. He then shared that video with his students via a private YouTube URL; meaning, only those with the URL could find and view the video. This video, hereafter referred to as "The Video," is available at: https://youtu.be/RrOzY86YcEM (last visited Jan 19, 2022), and is incorporated herein by reference as though fully set forth herein.

78.   A copy of The Video is attached via USB stick as **Exhibit H** and is hereby incorporated by reference as though fully set forth herein.

79.   Attached hereto as **Exhibit I** is a copy of The Video's script Dr. Mehler prepared *prior to* recording The Video. The script, **Ex. I**, is hereby incorporated by reference as though fully set forth herein.

80.   Around the same time as Dr. Mehler uploaded The Video, Dr. Mehler provided his students a course-specific video for each class he was to instruct in the 2022 Spring Semester term. These videos are available for view, and are hereby incorporated by reference as though fully set forth herein, as follows:

a.   History 122: https://youtu.be/eZEkLIHmVJE (last visited Jan. 19, 2022), uploaded Jan. 7, 2022 (also attached hereto as **Exhibit H**);

b.   History 230: This video was posted on the class Canvas page, which was removed by FSU. Upon information and belief, FSU still has access to this video and will preserve the same pursuant to Plaintiff's preservation of evidence letter sent January 18, 2022.

c.      History 361: https://youtu.be/-78Px136zOo (last visited Jan. 19, 2022), uploaded Jan. 10, 2022; and https://youtu.be/gBhDtzaJEVU (last visited Jan. 19, 2022), uploaded Jan. 10, 2022 (both also attached hereto as **Exhibit H**).

81.     The Video is 14 minutes 14 seconds long and is peppered with jokes, characters, hyperbole, a commercial break, video clips, and cultural references.

82.     The Video is a video recorded version of The Show.

83.     On January 11, 2022, the first day of classes for Dr. Mehler's courses due to his having to reschedule the January 10, 2022, official first day due to a previously scheduled engagement, Dr. Mehler was met with classrooms full of students ready to learn.

84.     On January 11, 2022, FSU, through Defendant Cagle, via an e-mail from Defendant Cagle's official FSU email address, with an attached letter on official FSU letter head, (the "Letter," representing the combined e-mail and attached letter), placed Dr. Mehler on administrative leave pending an investigation into allegations that The Video violated Section 8-701 (the "ESD") of FSU's "University Policies" and Section 4.1(A) of the CBA.

85.     A copy of Defendant Cagle's January 11, 2022, letter is attached hereto as **Exhibit J** and is hereby incorporated by reference as though fully set forth herein.

86.     The Letter bears Defendant Cagle's signature above his official FSU title.

87.     The following day, Defendant Cagle e-mailed Dr. Mehler to clarify that the Letter did not place him on paid administrative leave but that, rather, the Letter placed Dr. Mehler on suspension pending investigation.

88.     A copy of FSU's Employee and Student Dignity policy is attached hereto as **Exhibit K** and is hereby incorporated by reference as though fully set forth herein.

89.     The     ESD     is     available     from     FSU's     website     here: https://www.ferris.edu/administration/adminandfinance/human/Forms/HRPPs/Employee Dignity.pdf (last visited Jan. 24, 2022).

90.     The ESD states its effective date was October 22, 2004.

91.     The October 22, 2004, version of the ESD was the effective version when the events and actions described herein occurred.

92.     A copy of the CBA is attached hereto as **Exhibit L** and is hereby incorporated by reference as though fully set forth herein.

93.     The ESD of the University Policies states:

**Sec. 8-701. Employee and Student Dignity.** The University expects all students and employees to conduct themselves with dignity and respect for students, employees and others. It is each individual's responsibility to behave in a civil manner and to make responsible choices about the manner in which they conduct themselves. Harassment of any kind, including sexual harassment, racial harassment, or harassment based upon any status protected from discrimination under the Policy on Non-Discrimination or State or federal law, is not acceptable at the University. The University does not condone or allow harassment of others, whether engaged in by students, employees, or by vendors or others doing business with the University. Harassment is the creation of a hostile or intimidating environment in which verbal or physical conduct, because of its severity or pervasiveness, is likely to significantly interfere with an individual's work or education, or adversely affect a person's living conditions. It is the responsibility of the President or his/her designee, to establish and administer University policy to support this principle.

94.     Section 4.1(A) of the CBA states:

4.1. Discipline

A. The Employer and the FF A recognize a mutual responsibility for promoting professional conduct that encourages quality in the educational process, thereby reflecting favorably upon the University. Breaches of professional conduct, as differentiated from incompetence, are subject to discipline including, but are not limited to: abuse of sick leave and other leaves, excessive tardiness, willful deficiencies in professional conduct and/or performance, violation of Employer policies, regulations and administrative directions not inconsistent with the terms of this Agreement, and violation of the terms of this Agreement. Alleged breaches of professional conduct shall be reported promptly to the offending Member.

Issues pertaining to competence will be handled through evaluation.

95.     Under the terms of the CBA, Defendants have discretion over whether to suspend a faculty member during the pendency of an investigation relating to the faculty member.

96.     The Letter also banned Dr. Mehler from campus and contact with current or former students or colleagues.

97.     The Video has been extensively viewed online (as of Jan. 19, 2022 at 10:56 a.m., the video has over 500,000 views), and was the subject of a number of news articles and news videos online.

98.     FSU uses a program called "Canvas," which is a course management system that supports online learning and teaching. Each class has a specific Canvas page where professors and students interact with one another, turn in homework, and post documents.

99.     Defendants deleted Dr. Mehler's classes' Canvas pages in response to the Video.

100.    FSU maintains, on its website, a page for each of its faculty members that provides views with a brief biography of the faculty member. Defendants deleted Dr. Mehler's faculty page in response to the Video.

101.    Upon information and belief, Defendant Cagle sent the Letter on the authorization and/or instruction of Defendant Eisler.

102.    Defendant Cagle, via the Letter, was acting on behalf of and with authorization from FSU.

103.    The Letter was sent as a direct result of Dr. Mehler's Video.

104.    The Video was the direct and proximate cause of the Letter and Defendants' actions taken thereunder.

105.    The Letter was a result of disagreement with the message, speech, viewpoint, and expression contained in the Video.

106.    As a result of Defendants banning Dr. Mehler from campus; prohibiting Dr. Mehler from contacting current or former students and colleagues; removing Dr. Mehler's class Canvass pages; and removing Dr. Mehler's faculty biography page from FSU's website, Dr. Mehler has suffered impairment of his personal and professional reputation, personal humiliation, and mental anguish and suffering.

107.    The Detroit Free Press quoted Defendant Eisler as follows: "I was shocked and appalled by this video [the Video]. It is profane, offensive and disturbing and in no way reflects our university [FSU] or its values." Associated Press, *Ferris State University Professor on Leave After Bizarre Video About Grades*, Detroit Free Press (Jan. 14, 2022, 8:32 a.m.), https://www.freep.com/story/news/local/michigan/2022/01/14/ferris-state-university-professor-barry-mehler-video-grades/6524425001/ (last visited Jan. 19, 2022). A copy of this article is attached hereto as **Exhibit M** and is hereby incorporated by reference as though fully set forth herein.

108.    Click on Detroit also has the same quote from Defendant Eisler. Shawn Ley, *Ferris State University Professor Suspended over Video of Profanity-Laced Rant*, Click on Detroit (Jan. 14, 2022, 7:31 p.m.), https://www.clickondetroit.com/news/local/2022/01/15/ferris-state-university-professor-suspended-over-video-of-profanity-laced-rant/ (last visited Jan. 19, 2022). A true and accurate copy of this article is attached hereto as **Exhibit N** and is hereby incorporated by reference as though fully set forth herein.

109.    News 9&10 has the same quote from Defendant Eisler and adds that Dr. Mehler's "bio on Ferris State's web-site has been removed." News 9and10 Site Staff, *Ferris State Professor on Leave After Posting Profanity-Laced Video to Students Online*, News 9&10 (Jan. 13, 2022), https://www.9and10news.com/2022/01/13/ferris-state-professor-on-leave-after-posting-profanity-laced-video-to-students-online/ (last

visited Jan. 19, 2022). A true and accurate copy of this article is attached hereto as **Exhibit O** and is hereby incorporated by reference as though fully set forth herein.

110. The New York Times reported the Video and had the same quote from Defendant Eisler. Eduardo Medina, *Professor Who Called Students 'Vectors of Disease' in Video Is Suspended*, New York Times (Jan. 16, 2021), https://www.nytimes.com/2022/01/16/us/barry-mehler-coronavirus.html (last visited Jan. 19, 2022). A true and accurate copy of this article is attached hereto as **Exhibit P** and is hereby incorporated by reference as though fully set forth herein.

111. Since Defendants' actions described herein, Dr. Mehler has received an outpouring of support including a flood of letters of support for him and The Video from students, instructors, and lawyers from across the country and, indeed, the world – along with a number of racist and anti-Semitic threats.

112. The content of The Video is related to Dr. Mehler's scholarship and teaching because, among other reasons, it was used as introductory material for all of his classes and describes his teaching style, philosophy, and class expectations; albeit, in some parts, via hyperbole. Further, the Video provides attention grabbing presentations on plagiarism, grading (and predestination), and Dr. Mehler's classroom attendance policy in the COVID-19 era, which are all related to Dr. Mehler's teaching.

113. Dr. Mehler's discussion in the Video of his COVID-19 policy, grading policy, and attendance policy are germane to his introducing his students to his courses.

114. In the Video, Dr. Mehler was speaking about numerous matters of public concern as evinced by his cultural references, for example to *Star Trek* and *Deadwood*; hot political topics, for example, COVID-19 and precautions taken to prevent the transmission thereof; and social concerns, for example, plagiarism and COVID-19's heightened impact on the elderly population.

18

115.   The Video touches on matters within the public concern including COVID-19, COVID-19 transmission prevention measures, pop culture, and plagiarism.

116.   The Show has never conflicted with FSU's interest in promoting the efficiency of the public services it performs through Dr. Mehler, namely as noted in the Letter, maintaining and promoting employees' and students' dignity; or, in other words, promoting treating others with dignity and respect and preventing harassment. FSU has known about The Show, viewed The Show, promoted The Show, and rewarded Dr. Mehler for his use of The Show in the past.

117.   As a video recording of The Show, and since The Show has never interfered with FSU's interest in promoting the efficiency of the public services it performs through Dr. Mehler, the Video similarly does not conflict with FSU's interest in promoting the efficiency of the public services FSU performs through Dr. Mehler.

118.   No reasonable person could watch the Video and come away thinking he was actually insulting or harassing his students, colleagues, or Defendants as evinced by the fact that, in the past The Show has been viewed and approved by FSU, and the fact that on January 11, 2022, Dr. Mehler's classes were full.

119.   The Video's profanity does not cause it to lose its First Amendment protections. *See* <u>Snyder v. Phelps</u>, 562 U.S. 443, 448, 461 (2011) (noting the First Amendment protected protesters holding insulting signs outside of Soldiers' funerals, including signs bearing the message: "[g]** hates fags"); <u>Cohen v. California</u>, 403 U.S. 15m 25 (1971) (noting the First Amendment precluded punishment for wearing a jacket emblazoned with the words "Fuck the Draft"); <u>Hardy v. Jefferson Cmty. Coll.</u>, 260 F.3d 671m 675m 679m 683 (6th Cir. 2001) (noting the First Amendment protected the instructor's use of the words "lady," "girl," "faggot," "nigger," and "bitch," in the course of "language and social constructivism," as they were relevant to the

instructor's lecture); <u>Mahanoy Area School Strict v. B.L. by and through Levy</u>, --- U.S. ---, 141 S. Ct. 2038, 2043-44 (2001) (noting "fuck school fuck softball fuck cheer fuck everything" not obscene); <u>Hardy v. Jefferson Community College</u>, 260 F.3d 671, 679-80 (6th Cir. 2001) (confirming that profanities that are racist and homophobic are protected when germane to the topic at hand).

120.    "[P]rofanity can serve to tweak (or amplify) the viewpoint that a message expresses, such that it can be hard to detangle the profanity from the underlying message—without the profanity, the message is not quite the same." <u>Iancu v. Brunetti</u>, 139 S. Ct. 2294, 2315 (2019) (Sotomayor and Bryer, JJ., Concurring).

121.    Dr. Mehler's use of profanity in the Video and The Show are amplify the messages he is transmitting such that the messages would not be the same, nor be understood to be, in large part, hyperbole, jest, performance, showmanship, and soliloquy.

122.    Freedom of speech and academic freedom are protected by the First Amendment.

123.    Freedom of speech and academic freedom are clearly established rights and have been since at least 1967 when the Supreme Court noted "academic freedom . . . is therefore a special concern of the First Amendment[.]" <u>Keyishian v. Bd. of Regents of Univ. of State of N. Y.</u>, 385 U.S. 589, 603 (1967). Further, retaliation based on "the content of [] classroom discourse," including the professor's lecture, materials, and remarks, is "as a matter of law, objectively unreasonable." <u>Hardy v. Jefferson Cmty. Coll.</u>, 260 F.3d 671, 683 (6th Cir. 2001).

124.    In the Video, Dr. Mehler criticized the administration, which would include all Defendants herein.

125.    Criticizing the government, or in this case, FSU and the administration, including Defendants Eisler and Cagle, is a protected activity under the First

Amendment. <u>Rosenblatt v. Baer</u>, 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion.").

126.    The right to criticize the government, or in this case, FSU and its administrators, is a clearly established right. <u>Bloch v. Ribar</u>, 156 F.3d 673, 682 (6th Cir. 1998) (quoting <u>Barrett v. Harrington</u>, 130 F.3d 246, 264 (6th Cir. 1997)) ("[T]he First Amendment right to criticize public officials is well-established and supported by ample caselaw. Furthermore, it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983.").

127.    FSU's started mission is:

Ferris State University prepares students for successful careers, responsible citizenship, and lifelong learning. Through its many partnerships and its career-oriented, broad-based education, Ferris serves our rapidly changing global economy and society.

https://www.ferris.edu/administration/president/mission.htm (last visited Jan. 21, 2022).

128.    FSU's vision statement is:

Building on the vision of our founders, Ferris State University will be an agile and transformational university. By integrating theory and practice, we will foster opportunity, discovery and professional preparation for a dynamic global society.

<u>Id.</u>

129.    FSU's core values are:

- **Collaboration:** Ferris builds partnerships within the university and the global community that promote shared goals and success.

- **Diversity:** Ferris commits to be an inclusive university community that respects the dignity of the individual and promotes the acceptance of others.

- **Ethical Community:** Ferris implements policies, procedures, and actions to promote transparency, advance our mission and foster integrity, civility, and respect within and beyond the university.

- **Excellence:** Ferris dedicates itself to innovation and quality execution that sustains and promotes relevance in a changing world through best practices and benchmarking.

- **Learning:** Ferris promotes hands-on, transformative learning; balancing theory and practice; encouraging teamwork and innovation; and emphasizing critical thinking—all are fundamental elements of career success.

- **Opportunity:** Ferris honors the legacy of our founders by encouraging and supporting all who wish to acquire the knowledge, leadership, and communication skills that are the foundations of personal success.

Id.

## COUNT I

### DEFENDANTS' ACTIONS CONSTITUTE RETALIATION IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS.

130.    Plaintiff incorporates herein by reference each and every paragraph as though fully set forth herein.

131.    In bringing his First Amendment challenges to Defendants' conduct, Plaintiff asserts not only his own rights, but also the rights of his students, colleagues, and anyone else who wishes to associate with his speech.

132.    Defendants' conduct constitutes retaliation and is thus violative of the First and Fourteenth Amendments, in further violation of 42 U.S.C. § 1983, for numerous and various reasons including, but not limited to, the fact that:

a.      Plaintiff's Video and The Show are presumptively protected by the First Amendment;

b.      Based on disdain or animus towards the content and message of Dr. Mehler's Video and The Show, Defendants have barred him from campus, suspended him from teaching, removed his Canvas pages, and removed his faculty bio page;

c.      In order to silence Dr. Mehler's message, Defendants have barred him from campus, suspended him from teaching, removed his Canvas pages, removed his faculty bio page, and have ordered him to "refrain from contact

with current or former students or colleagues regarding the investigation or your employment status";

d.     Defendant Eisler stated he was "shocked and appalled by" the Video and that it "is profane, offensive, and disturbing and in no way reflects" FSU "or its values";

e.     By describing the Video as "offensive and disturbing," Defendant Eisler's statements to the press demonstrates his personal animus towards and disagreement with the message and content of the Video;

f.     Defendant Eisler's statements to the press demonstrate FSU's animus towards and disagreement with the message and content of the Video;

g.     By stating the Video "in no way reflects our university [FSU] or its values," Defendant Eisler's statements to the press demonstrate that the Video was the motivating factor behind FSU and the remaining Defendants' actions' taken against Dr. Mehler;

h.     The Letter's statement that Dr. Mehler "should take down the recording [the Video] identified above" and the citation to the video as the genesis of the investigation demonstrate that the Video was the motivating factor behind Defendants' actions taken against Dr. Mehler;

i.     By removing Dr. Mehler's faculty bio page, his classes' Canvas pages, suspending him from teaching, banning him from campus, ordering him to refrain from contact with current or former students or colleagues, as set forth in the Letter, Defendants' actions would chill or deter any person of ordinary firmness from engaging in the unique pedagogy similar to those exhibited by Dr. Mehler in the Video and The Show;

j.     Banning Dr. Mehler from campus constitutes an adverse action that would chill or deter a person of ordinary firmness from engaging in First Amendment activity. *See* <u>Flege v. Williamstown Indep. Sch.</u>, No. CIVA 06-47-

DLB, 2007 WL 679022, at *10-11 (E.D. Ky. Mar. 1, 2007) (noting that whether a school banning a parent from the campus is sufficient to constitute an adverse action "is certainly a genuine issue of material fact that survives summary judgment"); and

      k.    By removing Dr. Mehler's faculty bio page, his classes' Canvas pages, suspending him from teaching, banning him from campus, ordering him to refrain from contact with current or former students or colleagues, as set forth in the Letter, Defendants' actions has chilled Dr. Mehler's, and would chill other persons or professors of ordinary firmness, academic freedoms to discuss, among other things, controversial topics, to criticize the government, to take creative pedagogical approaches to learning and instruction, and to discuss matters of public concern.

      133.    As a direct and proximate result of Defendants' unconstitutional actions, Plaintiff, his interests, and those wishing to associate with his speech have incurred and suffered and will continue to suffer substantial and irreparable damages including, but not limited to, the inability to present, view, and associate with First Amendment protected entertainment, as well as damage to his reputation and goodwill.

      134.    Under this Cause of Action, Plaintiff seeks nominal, compensatory, special, and punitive damages against Defendants Eisler and Cagle for their violations of the constitutional rights of Plaintiff, Plaintiff's current and former students and colleagues, and anyone wishing to associate with Plaintiff's speech and academic lessons.

      135.    Under this Cause of Action, Plaintiff also seeks immediate injunctive relief for 1) reinstatement as a tenured professor; 2) reinstatement of his 2022 Spring Semester Term classes' Canvas pages; 3) restore Dr. Mehler's faculty bio page on FSU's website; 4) remove Defendants' ban on Dr. Mehler from (a) campus and (b)

contact with current and former students and colleagues, including regarding FSU's investigation and Dr. Mehler's employment status; and 4) reinstate Dr. Mehler as the professor for (a) both sections of History 122, (b) both sections of History 230, and (c) History 361, against all Defendants.

136.   Further, under this Cause of Action, Plaintiff respectfully requests that this Honorable court enter an immediate Temporary Restraining Order followed by a preliminary and permanent injunction pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202, enjoining Defendants, as well as their officers, agents, employees, representatives, and assignees, from enforcing the Letter and from otherwise interfering with Plaintiff's free speech and academic freedom rights.

## COUNT II

### DEFENDANTS' ACTIONS CONSTITUTE AN IMPERMISSIBLE PRIOR RESTRAINT IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

137.   Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

138.   In bringing his First Amendment challenges to Defendants' conduct, Dr. Mehler asserts not only his own rights, but also the rights of his colleagues, students, and anyone wishing to associate with his speech and expression.

139.   Plaintiff alleges that Defendants violated his, and others, First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 in numerous and various ways including, but not limited to, by:

    a.   Enforcing an impermissible prior restraint by exercising unbridled discretion to suspend Dr. Mehler pending an investigation thereby silencing his speech and his academic freedom rights;

    b.   Enforcing an impermissible prior restraint by exercising unbridled discretion to prevent Dr. Mehler's current and former students and colleagues from associating with Dr. Mehler's speech and pedagogy;

c.      Enforcing an impermissible prior restraint by requiring Dr. Mehler to censor himself in order to speak on FSU's campus;

d.      Enforcing an impermissible prior restraint by requiring Dr. Mehler to censor himself in order to avoid the adverse actions described herein;

e.      Enforcing an impermissible prior restraint by requiring Dr. Mehler conform his academic freedom rights to Defendants whims in order to avoid being banned from campus, having his class Canvas pages removed, having his faculty bio page removed from FSU's website, and having his freedom to talk to his current and former students and colleagues;

f.      Enforcing an impermissible prior restraint by conforming his speech and academic freedom rights to Defendants censorship in order to retain those rights; and

g.      Using the ESD to effectuate an impermissible prior restraint on free speech and academic freedom.

140.   As a direct and proximate result of Defendants' actions, all as referenced herein, Plaintiff, as well as his current and former students and colleagues, and anyone wishing to associate with his speech and academic lessons, have suffered and will continue to suffer irreparable injuries including, but not limited to, loss of First Amendment-protected speech, academic freedom, and association rights.

141.   Under this Cause of Action, Plaintiff seeks nominal, compensatory, special, and punitive damages against Defendants Eisler and Cagle for their violations of the constitutional rights of Plaintiff, Plaintiff's current and former students and colleagues, and anyone wishing to associate with Plaintiff's speech and academic lessons.

142.   Under this Cause of Action, Plaintiff also respectfully requests this Honorable Court declare that Defendants' actions in banning Dr. Mehler from FSU's

26

campus; banning him from contact with current and former students and colleagues; and banning him from communicating with students to be unconstitutional as applied to Dr. Mehler.

143.    Further, under this Cause of Action, Plaintiff respectfully requests that this Honorable court enter an immediate Temporary Restraining Order followed by a preliminary and permanent injunction pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202, enjoining Defendants, as well as their officers, agents, employees, representatives, and assignees, from enforcing the Letter and from otherwise interfering with Plaintiff's free speech and academic freedom rights.

<u>COUNT III</u>

**DEFENDANTS' USE OF § 4.1(A) OF THE CBA AND THE ESD VIOLATE THE FIRST AMENDMENT**

144.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

145.    FSU's physical classrooms and online virtual classrooms are either limited public forums or non-public forums.

146.    In either fora, Defendants may not discriminate on the basis of viewpoint.

147.    As applied, Plaintiff alleges that Defendants' actions violated his First Amendment rights in violation of 42 U.S.C. § 1983 in numerous and various ways including, but not limited to by:

a.    Precluding Dr. Mehler's speech in Defendants' classrooms, both physical and virtual, on the basis of the viewpoint Dr. Mehler espouses;

b.    Permitting those who agree with Defendants' viewpoint on FSU's COVID-19 policies to speak in the fora, while preventing Dr. Mehler, who espoused his viewpoint of disagreeing with the policies in the Video, to speak in the same fora;

c. Permitting those whose pedagogy is not, as determined by Defendants, to be "profane, offensive, and disturbing," to speak in the fora, while preventing Dr. Mehler's pedagogy, who's Video is apparently, as described by Defendant Eisler, "profane, offensive, and disturbing" from speaking in the same fora; and

d. Drawing unreasonable distinctions between who may speak in FSU's classrooms in light of the purpose served by the fora

148. As a direct and proximate result of Defendants' actions, all as referenced herein, Plaintiff, has suffered and will continue to suffer irreparable injuries including, but not limited to, loss of First Amendment-protected speech, academic freedom, and association rights.

149. Under this Cause of Action, Plaintiff seeks nominal, compensatory, special, and punitive damages against Defendants Eisler and Cagle for their violations of the constitutional rights of Plaintiff, Plaintiff's current and former students and colleagues, and anyone wishing to associate with Plaintiff's speech and academic lessons.

150. Under this Cause of Action, Plaintiff also respectfully requests this Honorable Court declare that Defendants' actions in banning Dr. Mehler from FSU's campus; banning him from contact with current and former students and colleagues; and banning him from communicating with students to be unconstitutional as applied to Dr. Mehler.

151. Further, under this Cause of Action, Plaintiff respectfully requests that this Honorable court enter an immediate Temporary Restraining Order followed by a preliminary and permanent injunction pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202, enjoining Defendants, as well as their officers, agents, employees, representatives, and assignees, from enforcing the Letter and from otherwise interfering with Plaintiff's free speech and academic freedom rights.

<u>COUNT IV</u>

**THE ESD VIOLATES THE FIRST AND FOURTEENTH AMENDMENTS FACIALLY AND AS APPLIED**

152.   Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

153.   In bringing his First Amendment challenges to Defendants' conduct, Plaintiff asserts not only his own rights, but also the rights of his students, colleagues, and anyone else who wishes to associate with his speech.

154.   Defendants' conduct constitutes retaliation and is thus violative of the First and Fourteenth Amendments, in further violation of 42 U.S.C. § 1983, for numerous and various reasons including, but not limited to, the fact that:

a.   It is an impermissible content and viewpoint-based restriction on speech and academic freedom that is not necessary for any compelling governmental interest and is not sufficiently narrowly tailored;

b.   It invidiously and impermissibly discriminates against disfavored speech and expression;

c.   it is not narrowly tailored towards achieving the government's regulatory objectives and, thus, cannot pass strict or intermediate scrutiny;

d.   it is impermissibly vague on its face and as applied under the enhanced vagueness standards applied to laws that impact upon speech and expression; and

e.   it is impermissibly and substantially facially overbroad in relation to its plain legitimate sweep because, for example, it purportedly permits state actors to ban speech.

155.   As a direct and proximate result of the unconstitutional aspects of the ESD as well as Defendants' application thereof against Plaintiff, all as referenced herein, Plaintiff, as well as his current and former students and colleagues, and

anyone wishing to associate with his speech and academic lessons, have suffered and will continue to suffer irreparable injuries including, but not limited to, loss of First Amendment-protected speech, academic freedom, and association rights.

156.   Under this Cause of Action, Plaintiff seeks nominal, compensatory, special, and punitive damages against Defendants Eisler and Cagle for their violations of the constitutional rights of Plaintiff, Plaintiff's current and former students and colleagues, and anyone wishing to associate with Plaintiff's speech and academic lessons.

157.   Under this Cause of Action, Plaintiff also respectfully requests this Honorable Court declare that Defendants' actions in banning Dr. Mehler from FSU's campus; banning him from contact with current and former students and colleagues; and banning him from communicating with students to be unconstitutional as applied to Dr. Mehler.

158.   Further, under this Cause of Action, Plaintiff respectfully requests that this Honorable court enter an immediate Temporary Restraining Order followed by a preliminary and permanent injunction pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202, enjoining Defendants, as well as their officers, agents, employees, representatives, and assignees, from enforcing the Letter and from otherwise interfering with Plaintiff's free speech and academic freedom rights.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff prays this Honorable Court enter judgement against all Defendants in both their individual and official capacities, as appropriate, which would include:

A.   Entry of orders granting a Temporary Restraining Order, Preliminary, and Permanent Injunction as follows:

1)      Immediately reinstates Dr. Mehler from either "temporary paid administrative leave while an investigation is conducted" or suspension pending investigation;

2)      Immediately reinstates Dr. Mehler as the instructing professor for: (a) both sections of History 122, (b) both sections of History 230, and (c) History 361 he was assigned to teach for the 2022 Spring Semester Term;

3)      Immediately reinstates and/or restores Dr. Mehler's 2022 Spring Semester Term classes', listed above, Canvas pages'

4)      Immediately restores Dr. Mehler's faculty biography page to FSU's website;

5)      Immediately removes any and all restrictions on (a) Dr. Mehler's access to FSU's campus, (b) to whom Dr. Mehler may contact, regardless of medium, and (c) the content of the discussion Dr. Mehler may have with any person he so chooses to contact, regardless of medium; and

6)      Enjoins Defendants, as well as their officers, agents, employees, representatives, assignees, and any other person purporting to act on Defendants' behalf;

B.      A declaration that Defendants' use of § 4.1(a) of the CBA and the ESD against Prof. Mehler are unlawful as violative of the First Amendment;

C.      A declaration that the ESD is unlawful as violative of the First and Fourteenth Amendments;

D.      A declaration holding as unlawful and to set aside Defendants' decision to ban Dr. Mehler from FSU's campus, restrict to whom Dr. Mehler may contact, and via what mediums, and restrict the content of any contact Dr. Mehler may have with any person;

E.      Enter an award for money damages, including nominal, compensatory, punitive, and special, in favor of Dr. Mehler and/or his successor(s) in interest and against Defendants Eisler and Cagle, in an amount to be determined by the jury;

F.      Entry of an award for attorneys' fees and costs incurred herein pursuant to 42 U.S.C. § 1988 in favor of Dr. Mehler and/or his successor(s) in interest; and otherwise

G.      Enter such other and further relief as this Court may find to be just and proper in these circumstances.

Respectfully submitted,

Dated: January 25, 2022

*/s/ Matthew J. Hoffer*
Matthew J. Hoffer (P70495)
Matt@BradShaferLaw.com
Zachary M. Youngsma (MI P84148)
Zack@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906
T: 517-886-6560
F: 517-886-6565

*Attorneys for Plaintiff*

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 25, 2022

*/s/ Matthew J. Hoffer*
Matthew J. Hoffer (P70495)
Matt@BradShaferLaw.com
Zachary M. Youngsma (MI P84148)
Zack@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906
T: 517-886-6560
F: 517-886-6565

*Attorneys for Plaintiff*
