## UNITED SATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BARRY MEHLER,

      Plaintiff,

vs.

FERRIS STATE UNIVERSITY, DAVID L.
EISLER, individually and in his official
capacity as President of Ferris State University;
RANDY CAGLE, individually and in his
official capacity as Dean of Ferris State
University's College of Arts, Sciences and
Education; FERRIS STATE UNIVERSITY
BOARD OF TRUSTEES; and AMNA P.
SIEBOLD, ANNA L. RAMIREZ-SAENZ,
RUPESH K. SRIVASTAVA, LASHANDA R.
THOMAS, GEORGE K. HEARTWELL,
KURT A. HOFMAN, and RONALD E.
SNEAD, in their Official Capacities as Trustees
of Ferris State University's Board of Trustees,

      Defendants.

Case No. 1:22-CV-00071

Hon. Jane M. Beckering
Hon. Magistrate Judge Ray Kent

| | |
|---|---|
| **MATTHEW J. HOFFER (P70495)**<br>**SHAFER & ASSOCIATES, P.C.**<br>3800 Capital City Blvd., STE 2<br>Lansing, MI 48906<br>T: (517) 886-6560<br>F: (517) 886-6565<br><br>Attorneys for Plaintiff | **ROBERT M. VERCRUYSSE (P21810)**<br>**ANNE-MARIE VERCRUYSSE**<br>**WELCH (P70035)**<br>**CLARK HILL PLC**<br>500 Woodward Avenue, Suite 3500<br>Detroit, MI  48226<br>(313) 965-8325  (313) 309-6958<br>rvercruysse@clarkhill.com<br>awelch@clarkhill.com<br>Attorneys for Defendants |

## DEFENDANTS' ANSWER TO PLAINTIFF'S VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF; DAMAGES AND FURTHER INJUNCTIVE RELIEF AND JURY DEMAND

      COME NOW, Defendants FERRIS STATE UNIVERSITY, DAVID L. EISLER, RANDY

CAGLE, FERRIS  STATE  UNIVERSITY  BOARD  OF  TRUSTEES,  AMNA  P.  SIEBOLD,

ANNA L. RAMIREZ-SAENZ, RUPESH K. SRIVASTAVA, LASHANDA R. THOMAS, GEORGE K. HEARTWELL, KURT A. HOFMAN, and RONALD E. SNEAD (hereinafter Defendants) by Robert M. Vercruysse and Anne-Marie Welch of the law firm Clark Hill, PLC and in answer to Plaintiff's Verified Complaint [ECF NO. 1]  (hereinafter "Complaint") say:

<u>**INTRODUCTION**</u>

1.      This is a civil action wherein Plaintiff Professor Barry Mehler, Ph.D. seeks an immediate, emergency, Temporary Restraining Order, and further injunctive relief, to restrain Defendants from violating his First and Fourteenth Amendment rights, including his academic freedom, by summarily removing him from instructing his classes at Ferris State University ("FSU" or the "University"), removing his faculty page from the University website, banning him from campus, prohibiting him from speaking with current or former students or faculty, and otherwise retaliating against him for criticizing the University's COVID-19 policies.

**RESPONSE**: In Answer to Paragraph 1 of Plaintiff's Complaint, Defendants admit that Plaintiff has filed a Complaint seeking relief.  Defendants aver that Plaintiff is not entitled to the requested relief.

2.      A Dr. Mehler is a distinguished, tenured professor who has served as an instructor at FSU for over 30 years. On January 9, 2021, Dr. Mehler shared videos with his students for the term, via private URL, introducing them to him and his classes. One such video portrayed Dr. Mehler's well-known and celebrated provocative style and included criticism of the University's COVID-19 policy along with his long-standing bits used to draw students' attention to plagiarism and his grading policy. The video went "viral" and, when it came to the University administrators' attention, they took the above-described actions against Dr. Mehler to silence his criticism.  Dr. Mehler now seeks emergency injunctive relief to return him to his students and further seeks

money damages and attorney fees against the individuals responsible for trampling his fundamental First and Fourteenth Amendment rights.

**RESPONSE**: Answering Paragraph 2 of Plaintiff's Complaint, Defendants admit that Plaintiff is a tenured professor who has been employed since 1988 and that in January 2022 Plaintiff shared a video with Ferris State University (hereinafter "FSU") students wherein he referred to the FSU students as "cocksuckers" (hereinafter "c*cksuckers") and told them "fuck you" and "keep your fucking distance" (hereinafter "f*ck" and "f*cking") in violation of the parties' Collective Bargaining Agreement and Board Policy with regard to Employee – Student Dignity.  Defendants aver that Plaintiff is currently on administrative leave pending investigation, with full pay and benefits.  Defendants deny as untrue the remaining allegations contained in Paragraph 2 and leave Plaintiff to his proofs.

## JURISDICTION AND VENUE

3.      Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented here by virtue of 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4).

**RESPONSE**: Answering Paragraph 3 of Plaintiff's Complaint, Paragraph 3 of Plaintiff's Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny as untrue any allegations that are inconsistent with applicable law.

4.      The prayer for declaratory relief is founded in part on Rule 57 of the Federal Rules of Civil Procedure as well as in 28 U.S.C. § 2201, the latter of which provides that:

> . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . .

**RESPONSE**:  Answering Paragraph 4 of Plaintiff's Complaint, Paragraph 4 of Plaintiff's Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny as untrue any allegations that are inconsistent with applicable law.

5.     Jurisdiction to hear Plaintiff's state law claims is conferred upon this Court pursuant to this Court's supplemental pursuant to 28 U.S.C. § 1367 as such claims share a common nucleus of operate facts such that they form part of the same case or controversy as Plaintiff's claims that invoke this Court's original jurisdiction.

**RESPONSE**: Answering Paragraph 5 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein because Plaintiff has made no state law claims.

6.     The statutory law which further authorizes the institution of this suit, and in particular the damage claims asserted herein, is 42 U.S.C. § 1983 which provides, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, or any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

**RESPONSE**: Answering Paragraph 6 of Plaintiff's Complaint, Paragraph 6 of Plaintiff's Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny as untrue any allegations that are inconsistent with applicable law.

7.     Jurisdiction of this Court to grant injunctive relief is conferred upon this Court by Rule 65 of the Federal Rules of Civil Procedure, and by 28 U.S.C. § 2202, the latter of which provides: "Further necessary or proper relief on a declaratory judgment or decree may be granted

after reasonable notice and hearing, against any adverse party whose right shave been determined by such judgment."

**RESPONSE**: Answering Paragraph 7 of Plaintiff's Complaint, Paragraph 7 of Plaintiff's Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny as untrue any allegations that are inconsistent with applicable law.

8.      Federal question jurisdiction for the request for attorney fees and costs is conferred by 42 U.S.C. § 1988.

**RESPONSE**: Answering Paragraph 8 of Plaintiff's Complaint, Defendants admit that either Plaintiff or Defendants may be awarded fees and costs pursuant to 42 U.S.C. § 1988 in the proper case.

9.      No other action, civil or criminal, is pending in any state court involving the Plaintiff regarding the activities and events here.

**RESPONSE**: Answering Paragraph 9 of Plaintiff's Complaint, Defendants admit the allegation.

10.      This suit is authorized by law to redress deprivations of rights, privileges, and immunities secured by the First and Fourteenth Amendments to the United States Constitution, and for declaratory and injunctive relief.

**RESPONSE**: Answering Paragraph 10 of Plaintiff's Complaint, Defendants deny that this suit is authorized by law, but admit that Plaintiff has brought a complaint seeking declaratory and injunctive relief.

11.      Pursuant to 28 U.S.C. § 1391(e), venue in this Court is appropriate as both Plaintiff and Defendants are located and reside within the Western District of Michigan, and the injury

complained of and acts causing that injury have occurred and will continue to occur in the Western District of Michigan.

**RESPONSE**: Answering Paragraph 11 of Plaintiff's Complaint, Defendants admit the allegation contained therein except to deny that any injury to Plaintiff has occurred because it is untrue.

12.     The Agreement between the Board of Trustees of Ferris State University and the Ferris Faculty Association (the "CBA") does not preclude brining a Civil Rights Act claim directly in this court. McDonald v. City of W. Branch, Mich., 466 U.S. 284 (1984).

**RESPONSE**: Answering Paragraph 12 of Plaintiff's Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny as untrue any allegations that are inconsistent with applicable law.

## PARTIES

13.     Plaintiff Dr. Barry Mehler ("Plaintiff" or "Dr. Mehler") is an adult resident of the State of Michigan.

**RESPONSE**: Answering Paragraph 13 of Plaintiff's Complaint, Defendants admit the allegation.

14.     Defendant Ferris State University (again, "FSU" or the "University") is public university owned and operated by the State of Michigan pursuant to MCL 390.801 et. seq. FSU is located at 1201 S. State Street in Big Rapids, Michigan.

**RESPONSE**: Answering Paragraph 14 of Plaintiff's Complaint, Defendants admit that pursuant to MCL 390.801 et. seq., the University is a constitutional body corporate.  Defendants further admit that the University is located at 1201 S. State Street in Big Rapids, Michigan.  Defendants deny the remaining allegations in Paragraph 14 of the Complaint as untrue.

15.     Defendant David L. Eisler ("Eisler") is the President of FSU. Eisler has the power to, among other things, initiate an investigation into Dr. Mehler, suspend Dr. Mehler from campus,

and remove Dr. Mehler's Canvas class and faculty pages. Defendant Eisler is sued in both his Individual and his official capacity.

**RESPONSE**: Answering Paragraph 15 of Plaintiff's Complaint, Defendants admit the allegation.

16.     Upon information and belief, Defendant Eisler is an adult resident of the State of Michigan.

**RESPONSE**: Answering Paragraph 16 of Plaintiff's Complaint, Defendants admit that Defendant Eisler is an adult resident of Michigan.

17.     Defendant Randy Cagle ("Cagle") is the Dean of FSU's College of Arts, Sciences, and Education. Cagle has the power to, among other things, initiate an investigation into Dr. Mehler, suspend Dr. Mehler from campus, and remove Dr. Mehler's Canvas class and faculty pages. Defendant Cagle is sued in both his individual and his official capacity.

**RESPONSE**: Answering Paragraph 17 of Plaintiff's Complaint, Defendants admit that Defendant Cagle is the Dean of FSU's College of Arts, Sciences and Education and that he can only recommend the actions  but with the approval of the Provost or President, has the powers set forth in Paragraph 17 of Plaintiff's Complaint.

18.     Upon information and belief, Defendant Cagle is an adult resident of the State of Michigan.

**RESPONSE**: Answering Paragraph 18 of Plaintiff's Complaint, Defendants admit the allegation.

19.     Defendants Eisler and Cagle are employees of FSU and act on FSU's behalf.

**RESPONSE**: Answering Paragraph 19 of Plaintiff's Complaint, Defendants admit the allegation.

20.     Defendant Board of Trustees ("Board") is the Board of Trustees of FSU. Board has the power and authority to, among other things, govern and supervise FSU, control and direct FSU expenditures, launch an investigation into Dr. Mehler, suspend Dr. Mehler from campus, and

remove Dr. Mehler's Canvas class and faculty pages. Defendant Board resides at 1201 S. State Street, CSS 301F in Big Rapids, Michigan.

**RESPONSE**: Answering Paragraph 20 of Plaintiff's Complaint, Defendants admit the allegation.

21.     Defendant Amna P. Seibold, Anna L. Ramirez-Saenz, Rupesh K. Srivastava, LaShanda R. Thomas, George K Heartwell, Kurt A. Hofman, and Ronald E. Snead (collectively, the "Trustees") are the Trustees of FSU. Trustees have the power and authority to, among other things, govern and supervise FSU, control and direct FSU expenditures, investigation into Dr. Mehler, suspend Dr. Mehler from campus, and remove Dr. Mehler's Canvas class and faculty pages.

**RESPONSE**: Answering Paragraph 21 of Plaintiff's Complaint, Defendants admit the individuals named therein are Trustees, except to deny that Anna L. Ramirez-Saenz is the correct spelling of Ana L. Ramirez-Saenz's name. Defendants deny as untrue the remaining allegations in Paragraph 21 of Plaintiff's Complaint in the manner and form alleged and leave Plaintiff to his proofs but avers that the Board acting collectively has such powers

22.     Upon information and belief, Defendant Siebold is an adult resident of East Grand Rapids, Michigan and is sued in her official capacity as an FSU Trustee only.

**RESPONSE**: Answering Paragraph 22 of Plaintiff's Complaint, Defendants admit the allegation.

23.     Ramirez-Saenz is an adult resident of the Village of Caledonia, Michigan and is sued in her official capacity as an FSU Trustee only.

**RESPONSE**: Answering Paragraph 23 of Plaintiff's Complaint, Defendants admit the allegation.

24.     Defendant Srivastava is an adult resident of the City of Wixom, Michigan and is sued in his official capacity as an FSU Trustee only.

**RESPONSE**: Answering Paragraph 24 of Plaintiff's Complaint, Defendants admit the allegation.

25. Defendant Thomas is an adult resident of the City of Grosse Pointe, Michigan and is sued in her official capacity as an FSU Trustee only.

**RESPONSE**: Answering Paragraph 25 of Plaintiff's Complaint, Defendants admit the allegation.

26. Upon information and belief, Defendant Heartwell is an adult resident of the State of Michigan and is sued in his official capacity as an FSU Trustee only.

**RESPONSE**: Answering Paragraph 26 of Plaintiff's Complaint, Defendants admit the allegation.

27. Defendant Hofman is an adult resident of the City of Grand Rapids, Michigan and is sued in his official capacity as an FSU Trustee only.

**RESPONSE**: Answering Paragraph 27 of Plaintiff's Complaint, Defendants admit the allegation.

28. Upon information and belief, Defendant Snead is an adult resident of the State of Michigan and is sued in his official capacity as an FSU Trustee only.

**RESPONSE**: Answering Paragraph 28 of Plaintiff's Complaint, Defendants admit the allegation.

## RELEVANT BACKGROUND INFORMATION

29. In 1970, Dr. Mehler graduated from the Yeshiva University in New York with a Bachelor of Arts in History.

**RESPONSE**: Answering Paragraph 29 of Plaintiff's Complaint, Defendants admit the allegation.

30. In 1972, Dr. Mehler graduated from the City College of New York with a Master of Arts degree in Labor History.

**RESPONSE**: Answering Paragraph 30 of Plaintiff's Complaint, Defendants admit the allegation.

31. Dr. Mehler earned his Ph.D in the fields of History of Racism; Behavior-Genetic Analysis; and History of Science in 1988 from the University of Illinois at Champaign-Urbana.

**RESPONSE**: Answering Paragraph 31 of Plaintiff's Complaint, Defendants admit the allegation.

32.     Dr. Mehler's teaching career began in 1977 as a History instructor at Washington University in St. Louis, Missouri. He was a National Science Foundation Fellow Research Associate in the History of Science department of Washington University from 1976 through 1980.

**RESPONSE**: Answering Paragraph 32 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

33.     In 1981, Dr. Mehler transferred to the University of Illinois where he was a National Institute of Mental Health Trainee in the Program for the Study of Institutional Racism. From 1986 through 1988, Dr. Mehler worked on the University of Illinois' IBM Excel Project where he designed programs in historical demography and supercomputer applications for the social sciences.

**RESPONSE**: Answering Paragraph 33 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

34.     Dr. Mehler began his tenure at FSU in 1988 as an Instructor in the Department of Humanities. In 1990, he became an Assistant Professor and in 1994 he earned tenure as an Associate Professor. Dr. Mehler became a Professor in 1999.

**RESPONSE**: Answering Paragraph 34 of Plaintiff's Complaint, Defendants admit the allegation contained therein except to deny as untrue that Plaintiff was employed as an Instructor with tenure in 1988.

35.     Dr. Mehler is a tenured professor at FSU.

**RESPONSE**: Answering Paragraph 35 of Plaintiff's Complaint, Defendants admit the allegation.

36.     Dr. Mehler's Curriculum Vitae detailing his distinguished academic career, courses taught, research interests, professional activities, and publications is attached hereto as **Exhibit A** and is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 36 of Plaintiff's Complaint, Defendants admit that Plaintiff has attached an "Exhibit A", but Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

37.     Dr. Mehler is well known for his teaching philosophy of "Thinking History vs Teaching History." Over the course of his tenure at FSU, Dr. Mehler has developed a unique pedagogy where his courses are designed as a TV variety show.

**RESPONSE**: Answering Paragraph 37 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein leaving Plaintiff to his proofs.

38.     He is well known for "The Show," previously entitled, "Sympathy for the Devil" and more recently, "More Bad News," both brought to you by Camel Cigarettes.

**RESPONSE**: Answering Paragraph 38 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein leaving Plaintiff to his proofs.

39.     It has been a staple of all Dr. Mehler's classes for at least two decades that his students are required to submit weekly journals reflecting on their experience in the class.

**RESPONSE**: Answering Paragraph 39 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

40.     The Show has been well received by Dr. Mehler's students and Dr. Mehler has continued to refine The Show based on the feedback he received from students, including in their journals.

11

**RESPONSE**: Answering Paragraph 40 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

41.     Dr. Mehler's proactive [sic] teaching style and The Show, including his use of profanity, is well known to FSU and cherished by its students, has been brought to FSU's attention on multiple occasions and has been celebrated beyond just Dr. Mehler's classroom.

**RESPONSE**: Answering Paragraph 41 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein leaving Plaintiff to his proofs.

42.     In 2014, Dr. Mehler applied for a merit based promotion. In his essay in support of the promotion, which is attached hereto as **Exhibit B** and is hereby incorporated by reference as though fully set forth herein, Dr. Mehler explains The Show and his use of The Show to stimulate and engage his students.

**RESPONSE**: Answering Paragraph 42 of Plaintiff's Complaint, Defendants admit that Plaintiff applied for a merit increase in 2014 with Exhibit B attached, but Plaintiff does not mention calling his students c*cksuckers", telling students "f*ck you" and "keep your f*cking distance," or the use of profanity.

43.     At Dr. Mehler's request, Prof. Gary Huey wrote a letter in support of the merit increase. That letter explains:

> Barry is trying a very different approach to his teaching. His emphasis is on provoking thinking in his students. The methods he employs may not be everyone's cup of tea, but I know from talking to student that those who "get it," and most do by the end of the semester, enjoyed the experience and they do learn to think.

**RESPONSE**: Answering Paragraph 43 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

44.     A copy of Prof. Gary Huey's letter in support is attached hereto as **Exhibit C** and is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 44 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

45.     FSU granted Dr. Mehler's 2014 application for a merit increase.

RESPONSE: Answering Paragraph 45 of Plaintiff's Complaint, Defendants admit the allegation.

46.     Also in approximately 2014, Dr. Mehler brought The Show beyond his classroom and to FSU at large. On April 4, 2014, on FSU's campus, Dr. Mehler presented a "Passion for the Past" series sponsored by FSU's Honors Program. A copy of this series' filer [sic] is attached hereto as **Exhibit D** and is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 46 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein except to admit that Plaintiff presented "Passion for the Past" on April 4, 2014.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations contained therein and therefore, leave Plaintiff to his proofs.

47.     In 2015, Dr. Mehler was nominated for a Distinguished Teaching Award.  A true and accurate copy of his "Consent to Nominate" is attached hereto as **Exhibit E**, which is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 47 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and aver that Plaintiff was not awarded a Distinguished Teaching Award by the faculty.

48.     In the Consent to Nominate, Dr. Mehler explains his pedagogy the following statement regarding The Show:

My teaching techniques are totally original.  Two days before the new semester started this Fall, I sent all my students an email welcoming them to the new season of my show, "Sympathy for the Devil."  The attachment was headed: "WARNING," in inch high bold red print.  Below the student reads:

> Dr. Mehler's show, "Sympathy for the Devil," is rated NC-17 – NOT FOR CHILDREN, CHILDREN NOT ADMITTED.  The show contains gratuitous violence, lots of profanity and all kinds of perversions.  The show is about American history and therefore contains insulting depictions of virtually every racial, ethnic and religious group. If profanity offends you or you do not want to have your values challenged, please do not take this class.  This is Satan's show and no respect is show to prophets or saints of any description.

My courses are all designed as a TV variety show entitled, "Sympathy for the Devil." The idea is to present the course material in an unusual way which takes the students out of the normal classroom environment and transports them onto the set of a TV show, where the rules of the game are all new and strange. None of this is explained.  The medium is the message. Many students have reported in their initial journals, a collective experience of bewilderment, often expressed as, "Am I in the right room? This can't be a history class?"

**RESPONSE**: Answering Paragraph 48 of Plaintiff's Complaint, Defendants admit that a portion of Exhibit E is accurately quoted but are without information sufficient to form a belief as to the truth of his allegation and leave Plaintiff to his proofs.

49.    The Notice of Consent further states: "And then I explain my grading system, which is based on the Calvinist doctrine of predestination.  I tell them that just as Calvin believed salvation was entirely the result of God's grace, grades in this class have already been assigned and have nothing to do with your effort." **Ex. E**, at p. 2.

**RESPONSE**: Answering Paragraph 49 of Plaintiff's Complaint, Defendants admit that a portion of Exhibit E is accurately quoted but are without information sufficient to form a belief as to the truth of his allegation and leave Plaintiff to his proofs.

50.     Notice of Consent continues: "I, also think watching Deadwood really helped me improve my use of profanity and my understanding of its importance in American history. Americas [sic] were generally more profane than Europeans." **Ex. E**, at p.3.

**RESPONSE**: Answering Paragraph 50 of Plaintiff's Complaint, Defendants admit that a portion of Exhibit E is accurately quoted but are without information sufficient to form a belief as to the truth of his allegation and leave Plaintiff to his proofs.

51.     In approximately 2016, the then Dean of the College of Arts, Sciences, and Education, Dr. Kristi L. Haik, along with her assistant and interim Dean, Trinidy Williams, sat in on Dr. Mehler's introductory course session. That session included the use of a *Deadwood* scene as an illustration of plagiarism, complete with profanity and all, as discussed, *infra*.

**RESPONSE**: Answering Paragraph 51 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

52.     Thereafter, Dr. Haik gave Dr. Mehler a hug and told him how wonderful The Show was and exclaimed that she wished she had an instructor like Dr. Mehler when she was in school.

**RESPONSE**: Answering Paragraph 52 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

53.     Also in 2016, Dr. Mehler was again nominated for a Distinguished Teaching Award. Members of the Award Selection Committee individually attended a number of Dr. Mehler's lectures, all of which included The Show. The Award Selection Committee placed Dr. Mehler as a finalist for the award; however, the award that year was ultimately given to Prof. John Scott Gray, Ph.D.

**RESPONSE**: Answering Paragraph 53 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.  By way of further answer, Defendants aver that the faculty has never awarded a Distinguished Teaching Award to Plaintiff and that the 2016 award was given to Prof. John Scott Gray, PhD.

54.     A copy of the Award Selection Committee's letter informing Dr. Mehler he was a finalist is attached hereto as **Exhibit F**, which is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 54 of Plaintiff's Complaint, Defendants admit that a portion of Exhibit F is attached, but are without information to form a belief as to the truth of the remaining allegations contained therein and therefore, leave Plaintiff to his proofs.

55.     For at least a decade, Dr. Mehler's has introduced his classes by telling his student that their grades have been already been assigned in accordance with Calvinistic predestination, while his actual grading criteria is clearly set forth in the class syllabus.

**RESPONSE**: Answering Paragraph 55 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

56.     For at least a decade, Dr. Mehler has used a *Deadwood*-inspired soliloquy, including a line to the effect: "No limbered-dick cocksucker of an administrator is going to tell me how to teach my classes, because I'm a fucking tenured professor."

**RESPONSE**: Answering Paragraph 56 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

57.     In 1994, Dr. Mehler, along with two other individuals, began experimenting with undergraduate education, which led to the development of FSU's Structured Learning Assistance Program ("SLA").

**RESPONSE**: Answering Paragraph 57 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

58.     SLA is mandatory for FSU students in SLA designated classes receiving under a 75% grade. Students can choose a section that does not have SLA, but SLA's fill first. The program mandates attendance at four hours of weekly workshops that improve study skills and promote mastery of course content. The program's goal is to target students at high-risk-for failure in gateway courses and assist them in developing the necessary tools to succeed at FSU. The program is also optional for any student and continues to upper-level courses where it encourages collaborative learning.

**RESPONSE**: Answering Paragraph 58 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

59.     Dr. Mehler was instrumental in developing the SLA for FSU.

**RESPONSE**: Answering Paragraph 59 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

60.     As a result of Dr. Mehler's work in developing and implementing the SLA at FSU, FSU benefited from the recognition the SLA received.

**RESPONSE**: Answering Paragraph 60 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

61.     In 2000, in recognition of the SLA program, FSU was selected as the Hesburgh Award winner. The Hesbaugh Award is sponsored by the Teachers Insurance and Annuity Association College Retirement Equities Fund and the American Council on Education. Hesbaurgh Awardees receive national publicity, which includes a listing in the following years' Best Colleges issue of the *U.S. News and World Report*. *See* https://en.wikipedia.org/wiki/Hesburgh_Award#:~:text=The%20Hesburgh%20Award%20is%20an,and%20CREF%20Boards%20of%20Overseers. (last visited Jan. 24, 2022).

**RESPONSE**: Answering Paragraph 61 of Plaintiff's Complaint, Defendants admit the allegation.

62.     In June of 2015, Dr. Mehler began working on what became the Shoah Archive Project a/k/a the Shoah Visual History Project.

**RESPONSE**: Answering Paragraph 62 of Plaintiff's Complaint, Defendants deny the allegation contained therein but aver that beginning in fall 2016 Plaintiff received release time from teaching to work on the Shoah Visual History project.

63.     In the fall of 2017, Dr. Mehler rolled out the project for FSU. This project includes access to the University of Southern California's Foundation Visual History Archive making FSU only the third institution in Michigan and 53rd in the world to have access to a fully-streaming video collection of more than 54,000 primary source testimonies of survivors and witnesses of the Holocaust and other crimes against humanity. A news release from FSU's website regarding this acquisition                is                available                here: https://www.ferris.edu/HTMLS/news/archive/2017/march/shoah.htm (last visited Jan. 25, 2022).

**RESPONSE**: Answering Paragraph 63 of Plaintiff's Complaint, Defendants deny as untrue that Plaintiff singularly rolled out the project for FSU. Defendants admit the remaining allegations in Paragraph 63.

64. Dr. Mehler's rollout of this program at FSU included a week long training program for approximately 15 faculty members conducted by Dr. Mehler as well as two experts from the Shoah Archive and several other professionals.

**RESPONSE**: Answering Paragraph 64 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

65. Dr. Mehler then ran two Faculty Learning and Teaching Center programs, one after the other, each approximately six to eight weeks long.

**RESPONSE**: Answering Paragraph 65 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

66. The purpose of the Shoah Archive Project was to incorporate genocide studies across the curriculum and into as many courses as possible. Dr. Mehler engaged with the Criminal Justice Program, Social Work Program, College of Education, the International Studies Office, and the College of Arts and Sciences. Dr. Mehler also designed a curriculum for FSU's upper level math class as well as for the introductory Business orientation classes that incorporated the Shoah Archive Project.

**RESPONSE**: Answering Paragraph 66 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

67.     In further support of this program, Dr. Mehler donated $500 towards a special fund set up in conjunction with FSU as part of FSU's foundation funds.

**RESPONSE**: Answering Paragraph 67 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

68.     Dr. Mehler trained his replacement who took over the program in the fall of 2021.

**RESPONSE**: Answering Paragraph 68 of Plaintiff's Complaint, Defendants deny the allegation contained therein but aver that in 2020 Plaintiff did provide some guidance to his replacement who took over the program in fall of 2020.

69.     Dr. Mehler remains on the Shoah committee and was instrumental in FSU Honors Program's February 16, 2021, webinar titled: Women, Trauma and Genocide: Sexual Violence against Women in the Holocaust. The webinar is proudly promoted on FSU Honors Program's website available here: https://ferrishonors.com/2021/02/09/women-trauma-and-genocide-webinar-series/ (last visited Jan. 25, 2022).

**RESPONSE**: Answering Paragraph 69 of Plaintiff's Complaint, Defendants admit the allegation.

## GENERAL ALLEGATIONS

70.     State universities are state actors for the purposes of 42 U.S.C. § 1983. Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 192 (1988) ("A state university without question is a state actor.").

**RESPONSE**: Answering Paragraph 70 of Plaintiff's Complaint, Paragraph 70 of Plaintiff's Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny as untrue any allegations that are inconsistent with applicable law.

71.     FSU is a state university.

20

**RESPONSE**: Answering Paragraph 71 of Plaintiff's Complaint, Paragraph 71 of Plaintiff's Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny as untrue any allegations that are inconsistent with applicable law.

72.     Defendant Eisler, by dint of him being the President of FSU, is both (1) a person under § 1983 who (2) acts under the color of state law in relation to the acts complained of herein.

**RESPONSE**: Answering Paragraph 72 of Plaintiff's Complaint, Paragraph 72 of Plaintiff's Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny as untrue any allegations that are inconsistent with applicable law.

73.     Defendant Cagle, by dint of him being the Dean of FSU's College of Arts, sciences, and Education, is both (1) a person under § 1983 who (2) acts under color of state law in relation to the acts complained of herein.

**RESPONSE**: Answering Paragraph 73 of Plaintiff's Complaint, Paragraph 73 of Plaintiff's Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny as untrue any allegations that are inconsistent with applicable law.

74.     For the 2022 Spring Semester Term, Dr. Mehler was scheduled to instruct three courses: History 122 – History of the US 1877 to the Present (two sections); History 230 – Michigan History (two sections); and History 361 – Genocide and the Modern World (one section).

**RESPONSE**: Answering Paragraph 74 of Plaintiff's Complaint, Defendants admit the allegation.

75.     Attached hereto as **Exhibit G** are the combined syllabi for Dr. Mehler's Spring 2022 Term, which is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 75 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

76.     The 2022 Spring Semester Term began on January 10, 2022, and is to end on May 6, 2022.

**RESPONSE**: Answering Paragraph 76 of Plaintiff's Complaint, Defendants admit the allegation.

77.     On January 9, 2022, Dr. Mehler uploaded an introductory video for the students in the five classes he was to instruct in the 2022 Spring Term. He then shared that video with his students via a private YouTube URL; meaning, only those with the URL could find and view the video. This video, hereafter referred to as "The Video," is available at: https://youtu.be/RrOzY86YcEM (last visited Jan 19, 2022), and is incorporated herein by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 77 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

78.     A copy of The Video is attached via USB stick as **Exhibit H** and is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 78 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

79.     Attached hereto as **Exhibit I** is a copy of The Video's script Dr. Mehler prepared *prior to* recording The Video. The script, **Ex. I**, is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 79 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

80.     Around the same time as Dr. Mehler uploaded The Video, Dr. Mehler provided his students a course-specific video for each class he was to instruct in the 2022 Spring Semester term. These videos are available for view, and are hereby incorporated by reference as though fully set forth herein, as follows:

> a.   History 122:  https://youtu.be/eZEkLIHmVJE  (last visited Jan. 19, 2022), uploaded Jan. 7, 2022 (also attached hereto as **Exhibit H**);
>
> b.   History 230: This video was posted on the class Canvas page, which was removed by FSU. Upon information and belief, FSU still has access to this video and will preserve the same pursuant to Plaintiff's preservation of evidence letter sent January 18, 2022.
>
> c.   History 361:  https://youtu.be/-78Px136zOo  (last visited Jan. 19, 2022), uploaded Jan. 10, 2022; and https://youtu.be/gBhDtzaJEVU (last visited Jan. 19, 2022), uploaded Jan. 10, 2022 (both also attached hereto as **Exhibit H**).

**RESPONSE**: Answering Paragraph 80 a, b and c of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

81.     The Video is 14 minutes 14 seconds long and is peppered with jokes, characters, hyperbole, a commercial break, video clips, and cultural references.

**RESPONSE**: Answering Paragraph 81 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.  Defendants further answer that the Video is peppered or

laced with profanity, vulgarities, and sexually charged language. Indeed, Plaintiff uttered 23 obscenities during the Video (derivatives of f*ck=15, shit=5, c*cksucker=2, asshole=1).

82.     The Video is a video recorded version of The Show.

**RESPONSE**: Answering Paragraph 82 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and leave Plaintiff to his proofs.

83.     On January 11, 2022, the first day of classes for Dr. Mehler's courses due to his having to reschedule the January 10, 2022, official first day due to a previously scheduled engagement, Dr. Mehler was met with classrooms full of students ready to learn.

**RESPONSE**: Answering Paragraph 83 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs. Defendants further answer that they learned of The Video via a complaint from a parent who's student disenrolled from Plaintiff's class as a result of The Video.

84.     On January 11, 2022, FSU, through Defendant Cagle, via an e-mail from Defendant Cagle's official FSU email address, with an attached letter on official FSU letter head, (the "Letter," representing the combined e-mail and attached letter), placed Dr. Mehler on administrative leave pending an investigation into allegations that The Video violated Section 8-701 (the "ESD") of FSU's "University Policies" and Section 4.1(A) of the CBA.

**RESPONSE**: Answering Paragraph 84 of Plaintiff's Complaint, Defendants admit that Plaintiff was placed on administrative leave because of complaints received about a video sent to FSU enrolled students wherein he called students and administrators c*cksuckers, told them "f*ck you" and to "keep your f*cking distance," and used profanity not related to the subjects taught.

85.     A copy of Defendant Cagle's January 11, 2022, letter is attached hereto as **Exhibit J** and is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 85 of Plaintiff's Complaint, Defendants admit the allegation.

86.     The Letter bears Defendant Cagle's signature above his official FSU title.

**RESPONSE**: Answering Paragraph 86 of Plaintiff's Complaint, Defendants admit the allegation.

87.     The following day, Defendant Cagle e-mailed Dr. Mehler to clarify that the Letter did not place him on paid administrative leave but that, rather, the Letter placed Dr. Mehler on suspension pending investigation.

**RESPONSE**: Answering Paragraph 87 of Plaintiff's Complaint, Defendants deny as untrue the allegation contained therein and leave Plaintiff to his proofs.

88.     A copy of FSU's Employee and Student Dignity policy is attached hereto as **Exhibit K** and is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 88 of Plaintiff's Complaint, Defendants admit the allegation.

89.     The ESD is available from FSU's website here: https://www.ferris.edu/administration/adminandfinance/human/Forms/HRPPs/EmployeeDignity.pdf (last visited Jan. 24, 2022).

**RESPONSE**: Answering Paragraph 89 of Plaintiff's Complaint, Defendants admit the allegation.

90.     The ESD states its effective date was October 22, 2004.

**RESPONSE**: Answering Paragraph 90 of Plaintiff's Complaint, Defendants admit the allegation.

91.     The October 22, 2004, version of the ESD was the effective version when the events and actions described herein occurred.

**RESPONSE**: Answering Paragraph 91 of Plaintiff's Complaint, Defendants admit the allegation.

92.     A copy of the CBA is attached hereto as **Exhibit L** and is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 92 of Plaintiff's Complaint, Defendants admit the allegation.

93.     The ESD of the University Policies states:

> **Sec. 8-701. Employee and Student Dignity.** The University expects all students and employees to conduct themselves with dignity and respect for students, employees and others. It is each individual's responsibility to behave in a civil manner and to make responsible choices about the manner in which they conduct themselves. Harassment of any kind, including sexual harassment, racial harassment, or harassment based upon any status protected from discrimination under the Policy on Non-Discrimination or State or federal law, is not acceptable at the University. The University does not condone or allow harassment of others, whether engaged in by students, employees, or by vendors or others doing business with the University. Harassment is the creation of a hostile or intimidating environment in which verbal or physical conduct, because of its severity or pervasiveness, is likely to significantly interfere with an individual's work or education, or adversely affect a person's living conditions. It is the responsibility of the President or his/her designee, to establish and administer University policy to support this principle.

**RESPONSE**: Answering Paragraph 93 of Plaintiff's Complaint, Defendants admit the allegation.

94.     Section 4.1(A) of the CBA states:

4.1. <u>Discipline</u>

> A. The Employer and the FF A[sic] recognize a mutual responsibility for promoting professional conduct that encourages quality in the educational process, thereby reflecting favorably upon the University. Breaches of professional conduct, as differentiated from incompetence, are subject to discipline including, but are not limited to: abuse of sick leave and other leaves, excessive tardiness, willful deficiencies in professional conduct and/or performance, violation of Employer policies, regulations and administrative directions not inconsistent with the terms of this Agreement, and violation of the terms of this Agreement. Alleged breaches of professional conduct shall be reported promptly to the offending Member.

> Issues pertaining to competence will be handled through evaluation.

**RESPONSE**: Answering Paragraph 94 of Plaintiff's Complaint, Defendants admit the allegation.

95.     Under the terms of the CBA, Defendants have discretion over whether to suspend a faculty member during the pendency of an investigation relating to the faculty member.

**RESPONSE**: Answering Paragraph 95 of Plaintiff's Complaint, Defendants admit the allegation.

96.     The Letter also banned Dr. Mehler from campus and contact with current or former students or colleagues.

**RESPONSE**: Answering Paragraph 96 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and therefore, leave Plaintiff to his proofs.

97.     The Video has been extensively viewed online (as of Jan. 19, 2022 at 10:56 a.m., the video has over 500,000 views), and was the subject of a number of news articles and news videos online.

**RESPONSE**: Answering Paragraph 97 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

98.     FSU uses a program called "Canvas," which is a course management system that supports online learning and teaching. Each class has a specific Canvas page where professors and students interact with one another, turn in homework, and post documents.

**RESPONSE**: Answering Paragraph 98 of Plaintiff's Complaint, Defendants admit the allegation.

99.     Defendants deleted Dr. Mehler's classes' Canvas pages in response to the Video.

**RESPONSE**: Answering Paragraph 99 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein but aver that because Plaintiff was placed on temporary administrative leave pending investigation, his Canvas page was also temporarily taken down.

100.     FSU maintains, on its website, a page for each of its faculty members that provides views with a brief biography of the faculty member. Defendants deleted Dr. Mehler's faculty page in response to the Video.

**RESPONSE**: Answering Paragraph 100 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein but aver that because Plaintiff was placed on temporary administrative leave pending investigation, his biography was temporarily taken down.

101.     Upon information and belief, Defendant Cagle sent the Letter on the authorization and/or instruction of Defendant Eisler.

**RESPONSE**: Answering Paragraph 101 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

102.     Defendant Cagle, via the Letter, was acting on behalf of and with authorization from FSU.

**RESPONSE**: Answering Paragraph 102 of Plaintiff's Complaint, Defendants admit the allegation.

103.     The Letter was sent as a direct result of Dr. Mehler's Video.

**RESPONSE**: Answering Paragraph 103 of Plaintiff's Complaint, Defendants deny as untrue the allegations as stated and aver that the letter was sent because of the complaints received and the decision to investigate the complaints over Plaintiff using gratuitous profanity, including calling FSU students or administrators c*cksuckers and telling students "f*ck you," and to "keep your f*cking distance" in the introductory video to each class that Plaintiff had been assigned to teach.

104.     The Video was the direct and proximate cause of the Letter and Defendants' actions taken thereunder.

**RESPONSE**: Answering Paragraph 104 of Plaintiff's Complaint, Defendants deny as untrue the allegations as stated but aver that the investigation over the complaints received was the cause of the administrative leave.

105.    The Letter was a result of disagreement with the message, speech, viewpoint, and expression contained in the Video.

**RESPONSE**: Answering Paragraph 105 of Plaintiff's Complaint, Defendants deny as untrue the allegations as stated but aver that just as students cannot be called the N-word, they cannot be called c*cksuckers or be told to "f*ck you" or to "keep your f*cking distance", *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995).

106.    As a result of Defendants banning Dr. Mehler from campus; prohibiting Dr. Mehler from contacting current or former students and colleagues; removing Dr. Mehler's class Canvass pages; and removing Dr. Mehler's faculty biography page from FSU's website, Dr. Mehler has suffered impairment of his personal and professional reputation, personal humiliation, and mental anguish and suffering.

**RESPONSE**: Answering Paragraph 106 of Plaintiff's Complaint, Defendants denies the allegations as untrue and leave Plaintiff to his proofs.

107.    The Detroit Free Press quoted Defendant Eisler as follows: "I was shocked and appalled by this video [the Video]. It is profane, offensive and disturbing and in no way reflects our university [FSU] or its values." Associated Press, *Ferris State University Professor on Leave After Bizarre Video About Grades*, Detroit Free Press (Jan. 14, 2022, 8:32 a.m.), https://www.freep.com/story/news/local/michigan/2022/01/14/ferris-state-university-professor-barry-mehler-video-grades/6524425001/ (last visited Jan. 19, 2022). A copy of this article is

attached hereto as **Exhibit M** and is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 107 of Plaintiff's Complaint, Defendants admit that The Detroit Free Press published the Article identified in said paragraph at Exhibit M, but deny that it is relevant.

108.    Click on Detroit also has the same quote from Defendant Eisler. Shawn Ley, *Ferris State University Professor Suspended over Video of Profanity-Laced Rant*, Click on Detroit (Jan. 14,  2022,  7:31  p.m.),  https://www.clickondetroit.com/news/local/2022/01/15/ferris-state-university-professor-suspended-over-video-of-profanity-laced-rant/ (last visited Jan. 19, 2022). A true and accurate copy of this article is attached hereto as **Exhibit N** and is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 108 of Plaintiff's Complaint, Defendants admit that the Click on Detroit article of January 14, 2022 attached as Exhibit N is attached but deny that it is relevant.

109.    News 9&10 has the same quote from Defendant Eisler and adds that Dr. Mehler's "bio on Ferris State's web-site has been removed." News 9and10 Site Staff, *Ferris State Professor on Leave After Posting Profanity-Laced Video to Students Online*, News 9&10 (Jan. 13, 2022), https://www.9and10news.com/2022/01/13/ferris-state-professor-on-leave-after-posting-profanity-laced-video-to-students-online/ (last visited Jan. 19, 2022). A true and accurate copy of this article is attached hereto as **Exhibit O** and is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 109 of Plaintiff's Complaint, Defendants admit that Exhibit O purports to be an article on News 9 & 10's website dated January 13, 2022, but deny that it is relevant.

110.     The New York Times reported the Video and had the same quote from Defendant Eisler. Eduardo Medina, *Professor Who Called Students 'Vectors of Disease' in Video Is Suspended*, New York Times (Jan. 16, 2021), https://www.nytimes.com/2022/01/16/us/barry-mehler-coronavirus.html (last visited Jan. 19, 2022). A true and accurate copy of this article is attached hereto as **Exhibit P** and is hereby incorporated by reference as though fully set forth herein.

**RESPONSE**: Answering Paragraph 110 of Plaintiff's Complaint, Defendants admit that Exhibit P purports to be an article reported in the New York Times on January 18, 2022, but deny that it is relevant.

111.     Since Defendants' actions described herein, Dr. Mehler has received an outpouring of support including a flood of letters of support for him and The Video from students, instructors, and lawyers from across the country and, indeed, the world – along with a number of racist and anti-Semitic threats.

**RESPONSE**: Answering Paragraph 111 of Plaintiff's Complaint, Defendants are without information sufficient to form a belief as to the truth of the allegations contained therein and therefore, leave Plaintiff to his proofs.

112.     The content of The Video is related to Dr. Mehler's scholarship and teaching because, among other reasons, it was used as introductory material for all of his classes and describes his teaching style, philosophy, and class expectations; albeit, in some parts, via hyperbole. Further, the Video provides attention grabbing presentations on plagiarism, grading (and predestation), and Dr. Mehler's classroom attendance policy in the COVID-19 era, which are all related to Dr. Mehler's teaching.

**RESPONSE**: Answering Paragraph 112 of Plaintiff's Complaint, Defendants deny as untrue the allegations as stated therein and aver that it is never permissive to call students or administrators c*cksuckers, and tell them to "f*ck you" and "keep your f*cking distance," nor is the profanity related to the history classes to be taught.

113.   Dr. Mehler's discussion in the Video of his COVID-19 policy, grading policy, and attendance policy are germane to his introducing his students to his courses.

**RESPONSE**: Answering Paragraph 113 of Plaintiff's Complaint, Defendants admit that Plaintiff's discussion of his grading and attendance policies were germane but deny as untrue the remaining allegations contained therein and leave Plaintiff to his proofs.

114.   In the Video, Dr. Mehler was speaking about numerous matters of public concern as evinced by his cultural references, for example to *Star Trek* and *Deadwood*; hot political topics, for example, COVID-19 and precautions taken to prevent the transmission thereof; and social concerns, for example, plagiarism and COVID-19's heightened impact on the elderly population.

**RESPONSE**: Answering Paragraph 114 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and aver that the allegations are presented as personal concerns (consistent with Plaintiff's request for FMLA leave or disability accommodation which he declined to pursue when requested per University procedure to provide medical documentation to support his request) and are unrelated to the History classes scheduled.

115.   The Video touches on matters within the public concern including COVID-19, COVID-19 transmission prevention measures, pop culture, and plagiarism.

**RESPONSE**: Answering Paragraph 115 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and deny that a video which is supposed to introduce enrolled FSU students to a course is a public forum or that a professor has the academic freedom to call his

students c*cksuckers or tell them to f*ck you and keep your f*cking distance while discussing any matter.

116.    The Show has never conflicted with FSU's interest in promoting the efficiency of the public services it performs through Dr. Mehler, namely as noted in the Letter, maintaining and promoting employees' and students' dignity; or, in other words, promoting treating others with dignity and respect and preventing harassment. FSU has known about The Show, viewed The Show, promoted The Show, and rewarded Dr. Mehler for his use of The Show in the past.

**RESPONSE**: Answering Paragraph 116 of Plaintiff's Complaint, Defendants deny as untrue the allegations as stated and aver that it is never permissible to call students c*cksuckers or tell them to f*ck you or to keep your f*cking distance just as students cannot be called the N-word. *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995).

117.    As a video recording of The Show, and since The Show has never interfered with FSU's interest in promoting the efficiency of the public services it performs through Dr. Mehler, the Video similarly does not conflict with FSU's interest in promoting the efficiency of the public services FSU performs through Dr. Mehler.

**RESPONSE**: Answering Paragraph 117 of Plaintiff's Complaint, Defendants deny as untrue the allegations as stated and aver that it is never permissible to call students c*cksuckers or tell them to f*ck you or to keep your f*cking distance just as students cannot be called the N-word. *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995).

118.    No reasonable person could watch the Video and come away thinking he was actually insulting or harassing his students, colleagues, or Defendants as evinced by the fact that, in the past The Show has been viewed and approved by FSU, and the fact that on January 11, 2022, Dr. Mehler's classes were full.

**RESPONSE**: Answering Paragraph 118 of Plaintiff's Complaint, Defendants deny as untrue the allegations as stated and aver that it is never permissible to call students c*cksuckers or tell them to f*ck you or to keep your f*cking distance just as students cannot be called the N-word. *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995).

119.    The Video's profanity does not cause it to lose its First Amendment protections. *See* Snyder v. Phelps, 562 U.S. 443, 448, 461 (2011) (noting the First Amendment protected protesters holding insulting signs outside of Soldiers' funerals, including signs bearing the message: "[g]** hates fags"); Cohen v. California, 403 U.S. 15m 25 (1971) (noting the First Amendment precluded punishment for wearing a jacket emblazoned with the words "Fuck the Draft"); Hardy v. Jefferson Cmty. Coll., 260 F.3d 671m 675m 679m 683 (6th Cir. 2001) (noting the First Amendment protected the instructor's use of the words "lady," "girl," "faggot," "nigger," and "bitch," in the course of "language and social constructivism," as they were relevant to the instructor's lecture); Mahanoy Area School Strict v. B.L. by and through Levy, --- U.S. ---, 141 S. Ct. 2038, 2043-44 (2001) (noting "fuck school fuck softball fuck cheer fuck everything" not obscene); Hardy v. Jefferson Community College, 260 F.3d 671, 679-80 (6th Cir. 2001) (confirming that profanities that are racist and homophobic are protected when germane to the topic at hand).

**RESPONSE**: Answering Paragraph 119 of Plaintiff's Complaint, Defendants deny as untrue the allegations as stated and aver that it is never permissible to call students c*cksuckers or tell them to f*ck you or to keep your f*cking distance just as students cannot be called the N-word. *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995).

120.    "[P]rofanity can serve to tweak (or amplify) the viewpoint that a message expresses, such that it can be hard to detangle the profanity from the underlying message—without the

profanity, the message is not quite the same." <u>Iancu v. Brunetti</u>, 139 S. Ct. 2294, 2315 (2019) (Sotomayor and Bryer, JJ., Concurring).

**RESPONSE**: Answering Paragraph 120 of Plaintiff's Complaint, Defendants admit that in the right circumstances, profanity related directly to the subject being taught may be permissible but aver that it is never permissible to call students or administrators c*cksuckers or to tell students to "f*ck you" or to "keep your f*cking distance," just as students cannot be called the N-word. *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995).

121.    Dr. Mehler's use of profanity in the Video and The Show are amplify the messages he is transmitting such that the messages would not be the same, nor be understood to be, in large part, hyperbole, jest, performance, showmanship, and soliloquy.

**RESPONSE**: Answering Paragraph 121 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and aver that it is never permissible to call students or administrators c*cksuckers or to tell students to "f*ck you" or to "keep your f*cking distance."

122.    Freedom of speech and academic freedom are protected by the First Amendment.

**RESPONSE**: Answering Paragraph 122 of Plaintiff's Complaint, Defendants admit the allegation contained therein.

123.    Freedom of speech and academic freedom are clearly established rights and have been since at least 1967 when the Supreme Court noted "academic freedom . . . is therefore a special concern of the First Amendment[.]" <u>Keyishian v. Bd. of Regents of Univ. of State of N. Y.</u>, 385 U.S. 589, 603 (1967). Further, retaliation based on "the content of [] classroom discourse," including the professor's lecture, materials, and remarks, is "as a matter of law, objectively unreasonable." <u>Hardy v. Jefferson Cmty. Coll.</u>, 260 F.3d 671, 683 (6th Cir. 2001).

**RESPONSE**: Answering Paragraph 123 of Plaintiff's Complaint, Defendants admit the statement of law set forth based on the facts in those cases is accurate, but deny that it is relevant to the facts alleged herein.

124.    In the Video, Dr. Mehler criticized the administration, which would include all Defendants herein.

**RESPONSE**: Answering Paragraph 124 of Plaintiff's Complaint, Defendants deny as untrue that all Defendants herein are "the administration" and leave Plaintiff to his proofs.  Defendants further admit that Plaintiff used gratuitous profanity toward students and administrators in his introductory non-public video that he sent to students enrolled in the five classes he was to instruct in the 2022 Spring Term.  In this non-public video Plaintiff also complained about the FSU policy of holding in person classes rather than virtual, which is related to his personal complaint and not protected free speech in a public forum.

125.    Criticizing the government, or in this case, FSU and the administration, including Defendants Eisler and Cagle, is a protected activity under the First Amendment. Rosenblatt v. Baer, 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion.").

**RESPONSE**: Answering Paragraph 125 of Plaintiff's Complaint, Defendants deny the allegation contained therein and aver that the First Amendment does not protect an employee calling his employer c*cksuckers and using words such as f*ck in its various forms and deny as untrue any remaining allegations contained therein.

126.    The right to criticize the government, or in this case, FSU and its administrators, is a clearly established right. Bloch v. Ribar, 156 F.3d 673, 682 (6th Cir. 1998) (quoting Barrett v. Harrington, 130 F.3d 246, 264 (6th Cir. 1997)) ("[T]he First Amendment right to criticize public

officials is well-established and supported by ample caselaw. Furthermore, it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983.").

**RESPONSE**: Answering Paragraph 126 of Plaintiff's Complaint, Defendants deny the allegation that the First Amendment protects an employee calling his employer c*cksuckers and using words such as f*ck in its various forms and deny as untrue any remaining allegations contained therein.

127.    FSU's started mission is:

Ferris State University prepares students for successful careers, responsible citizenship, and lifelong learning. Through its many partnerships and its career-oriented, broad-based education, Ferris serves our rapidly changing global economy and society.

https://www.ferris.edu/administration/president/mission.htm (last visited Jan. 21, 2022).

**RESPONSE**: Answering Paragraph 127 of Plaintiff's Complaint, Defendants admit that it has a stated mission, and aver that Plaintiff has accurately quoted from its mission statement in paragraph 127.

128.    FSU's vision statement is:

Building on the vision of our founders, Ferris State University will be an agile and transformational university. By integrating theory and practice, we will foster opportunity, discovery and professional preparation for a dynamic global society.
Id.

**RESPONSE**: Answering Paragraph 128 of Plaintiff's Complaint, Defendants admit the allegation.

129.    FSU's core values are:

- **Collaboration:** Ferris builds partnerships within the university and the global community that promote shared goals and success.
- **Diversity:** Ferris commits to be an inclusive university community that respects the dignity of the individual and promotes the acceptance of others.
- **Ethical Community:** Ferris implements policies, procedures, and actions to promote transparency, advance our mission and foster integrity, civility, and respect within and beyond the university.
- **Excellence:** Ferris dedicates itself to innovation and quality execution that sustains and promotes relevance in a changing world through best practices and benchmarking.

- **Learning:** Ferris promotes hands-on, transformative learning; balancing theory and practice; encouraging teamwork and innovation; and emphasizing critical thinking—all are fundamental elements of career success.
- **Opportunity:** Ferris honors the legacy of our founders by encouraging and supporting all who wish to acquire the knowledge, leadership, and communication skills that are the foundations of personal success.

Id.

**RESPONSE**: Answering Paragraph 129 of Plaintiff's Complaint, Defendants admit the allegation.

## COUNT I
### DEFENDANTS' ACTIONS CONSTITUTE RETALIATION IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS.

130.    Plaintiff incorporates herein by reference each and every paragraph as though fully set forth herein.

**RESPONSE**: Answering Paragraph 130 of Plaintiff's Complaint, Defendants incorporate herein by reference their foregoing answers as if fully restated herein.

131.    In bringing his First Amendment challenges to Defendants' conduct, Plaintiff asserts not only his own rights, but also the rights of his students, colleagues, and anyone else who wishes to associate with his speech.

**RESPONSE**: Answering Paragraph 131 of Plaintiff's Complaint, Defendants deny that Plaintiff has any standing to represent anyone other than himself under the Federal Rules of Civil Procedure as he has not filed his case as a class action and deny any remaining allegations.

132.    Defendants' conduct constitutes retaliation and is thus violative of the First and Fourteenth Amendments, in further violation of 42 U.S.C. § 1983, for numerous and various reasons including, but not limited to, the fact that:

**RESPONSE**: Answering Paragraph 132 of Plaintiff's Complaint, Defendants aver that Paragraph 132 (a-k) violates Fed.R.Civ.P 10(b).  Without waiving such objection and by way of further answer, Defendants deny that their conduct violates any rights of Plaintiff as an employee who has

called FSU students and administrators c*cksuckers and told students to "f*ck you" and "keep your f*cking distance" in a video unrelated to the class content he was assigned to teach.

    a.     Plaintiff's Video and The Show are presumptively protected by the First Amendment;

**RESPONSE**: Answering Paragraph 132 (a) of Plaintiff's Complaint, Defendants deny as untrue the allegations contained herein and leave Plaintiff to his proofs.

    b.     Based on disdain or animus towards the content and message of Dr. Mehler's Video and The Show, Defendants have barred him from campus, suspended him from teaching, removed his Canvas pages, and removed his faculty bio page;

**RESPONSE**: Answering Paragraph 132 (b) of Plaintiff's Complaint, Defendants deny as untrue the allegations contained herein and leave Plaintiff to his proofs.

    c.     In order to silence Dr. Mehler's message, Defendants have barred him from campus, suspended him from teaching, removed his Canvas pages, removed his faculty bio page, and have ordered him to "refrain from contact with current or former students or colleagues regarding the investigation or your employment status";

**RESPONSE**: Answering Paragraph 132 (c) of Plaintiff's Complaint, Defendants deny as untrue the allegations contained herein and leave Plaintiff to his proofs.

    d.     Defendant Eisler stated he was "shocked and appalled by" the Video and that it "is profane, offensive, and disturbing and in no way reflects" FSU "or its values";

**RESPONSE**: Answering Paragraph 132 (d) of Plaintiff's Complaint, Defendants admit the allegation.

e.      By describing the Video as "offensive and disturbing," Defendant Eisler's statements to the press demonstrates his personal animus towards and disagreement with the message and content of the Video;

**RESPONSE**: Answering Paragraph 132 (e) of Plaintiff's Complaint, Defendants deny as untrue the allegations contained herein and leave Plaintiff to his proofs.

f.      Defendant Eisler's statements to the press demonstrate FSU's animus towards and disagreement with the message and content of the Video;

**RESPONSE**: Answering Paragraph 132 (f) of Plaintiff's Complaint, Defendants deny as untrue the allegations contained herein except to admit that no faculty member should call FSU students or administrators "c*cksuckers and to "f*ck you" or "keep your f*cking distance"  just as no students or administrators should ever be called the N-word.

g.      By stating the Video "in no way reflects our university [FSU] or its values," Defendant Eisler's statements to the press demonstrate that the Video was the motivating factor behind FSU and the remaining Defendants' actions' taken against Dr. Mehler;

**RESPONSE**: Answering Paragraph 132 (g) of Plaintiff's Complaint, Defendants deny as untrue the allegations contained herein and leave Plaintiff to his proofs.

h.      The Letter's statement that Dr. Mehler "should take down the recording [the Video] identified above" and the citation to the video as the genesis of the investigation demonstrate that the Video was the motivating factor behind Defendants' actions taken against Dr. Mehler;

**RESPONSE**: Answering Paragraph 132 (h) of Plaintiff's Complaint, Defendants admit that complaints about the video resulted in the investigation but deny any adverse action has been taken at this time.

i.      By removing Dr. Mehler's faculty bio page, his classes' Canvas pages, suspending him from teaching, banning him from campus, ordering him to refrain from contact with current or former students or colleagues, as set forth in the Letter, Defendants' actions would chill or deter any person of ordinary firmness from engaging in the unique pedagogy similar to those exhibited by Dr. Mehler in the Video and The Show;

**RESPONSE**: Answering Paragraph 132 (i) of Plaintiff's Complaint, Defendants deny as untrue the allegations contained herein and leave Plaintiff to his proofs.

j.      Banning Dr. Mehler from campus constitutes an adverse action that would chill or deter a person of ordinary firmness from engaging in First Amendment activity. *See* Flege v. Williamstown Indep. Sch., No. CIVA 06-47-DLB, 2007 WL 679022, at *10-11 (E.D. Ky. Mar. 1, 2007) (noting that whether a school banning a parent from the campus is sufficient to constitute an adverse action "is certainly a genuine issue of material fact that survives summary judgment"); and

**RESPONSE**: Answering Paragraph 132 (j) of Plaintiff's Complaint, Defendants deny as untrue the allegations contained herein and leave Plaintiff to his proofs.

k.      By removing Dr. Mehler's faculty bio page, his classes' Canvas pages, suspending him from teaching, banning him from campus, ordering him to refrain from contact with current or former students or colleagues, as set forth in the Letter, Defendants' actions has chilled Dr. Mehler's, and would chill other persons or professors of ordinary firmness, academic freedoms to discuss, among other things, controversial topics, to criticize the government, to take creative pedagogical approaches to learning and instruction, and to discuss matters of public concern.

**RESPONSE**: Answering Paragraph 132 (k) of Plaintiff's Complaint, Defendants deny as untrue the allegations contained herein and leave Plaintiff to his proofs.

133.    As a direct and proximate result of Defendants' unconstitutional actions, Plaintiff, his interests, and those wishing to associate with his speech have incurred and suffered and will continue to suffer substantial and irreparable damages including, but not limited to, the inability to present, view, and associate with First Amendment protected entertainment, as well as damage to his reputation and goodwill.

**RESPONSE**: Answering Paragraph 133 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained herein and leave Plaintiff to his proofs.

134.    Under this Cause of Action, Plaintiff seeks nominal, compensatory, special, and punitive damages against Defendants Eisler and Cagle for their violations of the constitutional rights of Plaintiff, Plaintiff's current and former students and colleagues, and anyone wishing to associate with Plaintiff's speech and academic lessons.

**RESPONSE**: Answering Paragraph 134 of Plaintiff's Complaint, Defendants deny that Plaintiff has any standing to represent anyone other than himself under the Federal Rules of Civil Procedure and deny that Plaintiff is entitled to any remedy as no rights have been violated.

135.    Under this Cause of Action, Plaintiff also seeks immediate injunctive relief for 1) reinstatement as a tenured professor; 2) reinstatement of his 2022 Spring Semester Term classes' Canvas pages; 3) restore Dr. Mehler's faculty bio page on FSU's website; 4) remove Defendants' ban on Dr. Mehler from (a) campus and (b) contact with current and former students and colleagues, including regarding FSU's investigation and Dr. Mehler's employment status; and 4) reinstate Dr. Mehler as the professor for (a) both sections of History 122, (b) both sections of History 230, and (c) History 361, against all Defendants.

**RESPONSE**: Answering Paragraph 135 of Plaintiff's Complaint, Defendants deny that Plaintiff's rights have been violated by any action taken or that any remedy is needed.

136.    Further, under this Cause of Action, Plaintiff respectfully requests that this Honorable court enter an immediate Temporary Restraining Order followed by a preliminary and permanent injunction pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202, enjoining Defendants, as well as their officers, agents, employees, representatives, and assignees, from enforcing the Letter and from otherwise interfering with Plaintiff's free speech and academic freedom rights.

**RESPONSE**: Answering Paragraph 136 of Plaintiff's Complaint, Defendants deny that any injunctive relief is required and respectfully request that Count I be dismissed and that Defendants be awarded their fees and costs under 42 U.S.C. § 1988 as Plaintiff has filed a vexatious and non-meritorious action.

## <u>COUNT II</u>
### DEFENDANTS' ACTIONS CONSTITUTE AN IMPERMISSIBLE PRIOR RESTRAINT IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

137.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

**RESPONSE**: Answering Paragraph 137 of Plaintiff's Complaint, Defendants incorporate herein by reference their foregoing answers as if fully restated herein.

138.    In bringing his First Amendment challenges to Defendants' conduct, Dr. Mehler asserts not only his own rights, but also the rights of his colleagues, students, and anyone wishing to associate with his speech and expression.

**RESPONSE**: Answering Paragraph 138 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein because Plaintiff only has standing to assert his rights under the Federal Rules of Civil Procedure.

139.    Plaintiff alleges that Defendants violated his, and others, First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 in numerous and various ways including, but not limited to, by:

**RESPONSE**: Answering Paragraph 139 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

a.    Enforcing an impermissible prior restraint by exercising unbridled discretion to suspend Dr. Mehler pending an investigation thereby silencing his speech and his academic freedom rights;

**RESPONSE**: Answering Paragraph 139 a of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

b.    Enforcing an impermissible prior restraint by exercising unbridled discretion to prevent Dr. Mehler's current and former students and colleagues from associating with Dr. Mehler's speech and pedagogy;

**RESPONSE**: Answering Paragraph 139 b of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

c.    Enforcing an impermissible prior restraint by requiring Dr. Mehler to censor himself in order to speak on FSU's campus;

**RESPONSE**: Answering Paragraph 139 c of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

d.    Enforcing an impermissible prior restraint by requiring Dr. Mehler to censor himself in order to avoid the adverse actions described herein;

**RESPONSE**: Answering Paragraph 139 d of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

    e. Enforcing an impermissible prior restraint by requiring Dr. Mehler conform

his academic freedom rights to Defendants whims in order to avoid being banned from

campus, having his class Canvas pages removed, having his faculty bio page removed

from FSU's website, and having his freedom to talk to his current and former students and

colleagues;

**RESPONSE**: Answering Paragraph 139 e of Plaintiff's Complaint, Defendants deny as

untrue the allegations contained therein and leave Plaintiff to his proofs.  Defendants

further aver that Plaintiff has no academic freedom right to call his students and

administrators c*cksuckers or to tell his students to "f*ck you" and "keep your f*cking

distance."

    f. Enforcing an impermissible prior restraint by conforming his speech and

academic freedom rights to Defendants censorship in order to retain those rights; and

**RESPONSE**: Answering Paragraph 139 f of Plaintiff's Complaint, Defendants deny as

untrue the allegations contained therein and leave Plaintiff to his proofs.

    g. Using the ESD to effectuate an impermissible prior restraint on free speech

and academic freedom.

**RESPONSE**: Answering Paragraph 139 g of Plaintiff's Complaint, Defendants deny as

untrue the allegations contained therein and leave Plaintiff to his proofs.

  140. As a direct and proximate result of Defendants' actions, all as referenced herein,

Plaintiff, as well as his current and former students and colleagues, and anyone wishing to associate

with his speech and academic lessons, have suffered and will continue to suffer irreparable injuries

including, but not limited to, loss of First Amendment-protected speech, academic freedom, and

association rights.

**RESPONSE**: Answering Paragraph 140 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

141.    Under this Cause of Action, Plaintiff seeks nominal, compensatory, special, and punitive damages against Defendants Eisler and Cagle for their violations of the constitutional rights of Plaintiff, Plaintiff's current and former students and colleagues, and anyone wishing to associate with Plaintiff's speech and academic lessons.

**RESPONSE**: Answering Paragraph 141 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and aver that Plaintiff is not entitled to any remedy because his rights have not been violated.

142.    Under this Cause of Action, Plaintiff also respectfully requests this Honorable Court declare that Defendants' actions in banning Dr. Mehler from FSU's campus; banning him from contact with current and former students and colleagues; and banning him from communicating with students to be unconstitutional as applied to Dr. Mehler.

**RESPONSE**: Answering Paragraph 142 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs. By way of further answer, Defendants deny that any of Plaintiff's rights have been violated by placing him on administrative leave with full pay and benefits pending the completion of an investigation.

143.    Further, under this Cause of Action, Plaintiff respectfully requests that this Honorable court enter an immediate Temporary Restraining Order followed by a preliminary and permanent injunction pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202, enjoining Defendants, as well as their officers, agents, employees, representatives, and assignees, from enforcing the Letter and from otherwise interfering with Plaintiff's free speech and academic freedom rights.

**RESPONSE**: Answering Paragraph 143 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs. By way of further answer, Defendants deny that any of Plaintiff's rights have been violated by placing him on administrative leave with full pay and benefits pending the completion of an investigation and therefore aver that no remedy is necessary.

<u>**COUNT III**</u>
**DEFENDANTS' USE OF § 4.1(A) OF THE CBA AND THE ESD VIOLATE THE FIRST AMENDMENT**

144.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

**RESPONSE**: Answering Paragraph 144 of Plaintiff's Complaint, Defendants incorporate herein by reference their foregoing answers as if fully restated herein.

145.    FSU's physical classrooms and online virtual classrooms are either limited public forums or non-public forums.

**RESPONSE**: Answering Paragraph 145 of Plaintiff's Complaint, Defendants deny that classrooms at FSU are public forums and admit that classrooms are private rooms used in education of enrolled students with members of the public not present.  Defendants deny any remaining allegations as untrue.

146.    In either fora, Defendants may not discriminate on the basis of viewpoint.

**RESPONSE**: Answering Paragraph 146 of Plaintiff's Complaint, Defendants deny the allegations contained therein and aver that classrooms are private physical spaces dedicated for the purpose of educating enrolled students.

147.    As applied, Plaintiff alleges that Defendants' actions violated his First Amendment rights in violation of 42 U.S.C. § 1983 in numerous and various ways including, but not limited to by:

**RESPONSE**: Answering Paragraph 147 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

a.    Precluding Dr. Mehler's speech in Defendants' classrooms, both physical and virtual, on the basis of the viewpoint Dr. Mehler espouses;

**RESPONSE**: Answering Paragraph 147 a of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

b.    Permitting those who agree with Defendants' viewpoint on FSU's COVID-19 policies to speak in the fora, while preventing Dr. Mehler, who espoused his viewpoint of disagreeing with the policies in the Video, to speak in the same fora;

**RESPONSE**: Answering Paragraph 147 b of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and aver that the purpose of the space was to educate students on the class content he was assigned to teach for the classes in which the students enrolled.  Plaintiff's discussion of COVID-19 was private speech for his purposes only and unprotected as public comment under the First Amendment or academic freedom.

c.    Permitting those whose pedagogy is not, as determined by Defendants, to be "profane, offensive, and disturbing," to speak in the fora, while preventing Dr. Mehler's pedagogy, who's Video is apparently, as described by Defendant Eisler, "profane, offensive, and disturbing" from speaking in the same fora; and

**RESPONSE**: Answering Paragraph 147 c of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and aver that Plaintiff has no First Amendment

right to call students and administrators c\*cksuckers or to tell students to "f\*ck you" or to "keep your f\*cking distance."

      d.    Drawing unreasonable distinctions between who may speak in FSU's classrooms in light of the purpose served by the fora

**RESPONSE**: Answering Paragraph 147 d of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

      148.    As a direct and proximate result of Defendants' actions, all as referenced herein, Plaintiff, has suffered and will continue to suffer irreparable injuries including, but not limited to, loss of First Amendment-protected speech, academic freedom, and association rights.

**RESPONSE**: Answering Paragraph 148 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

      149.    Under this Cause of Action, Plaintiff seeks nominal, compensatory, special, and punitive damages against Defendants Eisler and Cagle for their violations of the constitutional rights of Plaintiff, Plaintiff's current and former students and colleagues, and anyone wishing to associate with Plaintiff's speech and academic lessons.

**RESPONSE**: Answering Paragraph 149 of Plaintiff's Complaint, Defendants deny that Plaintiff's rights have been violated or that he is entitled to any relief under the law.

      150.    Under this Cause of Action, Plaintiff also respectfully requests this Honorable Court declare that Defendants' actions in banning Dr. Mehler from FSU's campus; banning him from contact with current and former students and colleagues; and banning him from communicating with students to be unconstitutional as applied to Dr. Mehler.

**RESPONSE**: Answering Paragraph 150 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.  Defendants aver that Plaintiff has suffered no adverse action by being placed on administrative leave with full pay and benefits.

151.    Further, under this Cause of Action, Plaintiff respectfully requests that this Honorable court enter an immediate Temporary Restraining Order followed by a preliminary and permanent injunction pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202, enjoining Defendants, as well as their officers, agents, employees, representatives, and assignees, from enforcing the Letter and from otherwise interfering with Plaintiff's free speech and academic freedom rights.

**RESPONSE**: Answering Paragraph 151 of Plaintiff's Complaint, Defendants deny that Plaintiff's rights have been violated or that he is entitled to any relief under the law.

<u>COUNT IV</u>
**THE ESD VIOLATES THE FIRST AND FOURTEENTH AMENDMENTS FACIALLY AND AS APPLIED**

152.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

**RESPONSE**: Answering Paragraph 152 of Plaintiff's Complaint, Defendants incorporate herein by reference their foregoing answers as if fully restated herein.

153.    In bringing his First Amendment challenges to Defendants' conduct, Plaintiff asserts not only his own rights, but also the rights of his students, colleagues, and anyone else who wishes to associate with his speech.

**RESPONSE**: Answering Paragraph 153 of Plaintiff's Complaint, Defendants deny that Plaintiff has authority to represent anyone other than himself under Rule 23 of the Federal Rules of Civil Procedure.

154.     Defendants' conduct constitutes retaliation and is thus violative of the First and Fourteenth Amendments, in further violation of 42 U.S.C. § 1983, for numerous and various reasons including, but not limited to, the fact that:

**RESPONSE**: Answering Paragraph 154 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

      a.     It is an impermissible content and viewpoint-based restriction on speech and academic freedom that is not necessary for any compelling governmental interest and is not sufficiently narrowly tailored;

**RESPONSE**: Answering Paragraph 154 a of Plaintiff's Complaint, Defendants state that Defendants are not required to answer a statement of law unrelated to the facts of this case but nevertheless deny that the facts of this case demonstrate any violation of the law.

      b.     It invidiously and impermissibly discriminates against disfavored speech and expression;

**RESPONSE**: Answering Paragraph 154 b of Plaintiff's Complaint, state that Defendants are not required to answer a statement of law unrelated to the facts of this case but nevertheless deny that the facts of this case demonstrate any violation of the law.

      c.     it is not narrowly tailored towards achieving the government's regulatory objectives and, thus, cannot pass strict or intermediate scrutiny;

**RESPONSE**: Answering Paragraph 154 c of Plaintiff's Complaint, Defendants are not required to answer a statement of law unrelated to the facts of this case but nevertheless deny that the facts of this case demonstrate any violation of the law.  Defendants aver that Plaintiff has no right to call students or administrators c*cksuckers or to tell students to "f*ck you" or to "keep your f*cking distance."

     d.     it is impermissibly vague on its face and as applied under the enhanced vagueness standards applied to laws that impact upon speech and expression; and

**RESPONSE**: Answering Paragraph 154 d of Plaintiff's Complaint, Defendants are not required to answer a statement of law unrelated to the facts of this case but nevertheless deny that the facts of this case demonstrate any violation of the law.  Defendants aver that Plaintiff has no right to call students or administrators c*cksuckers or to tell students to "f*ck you" or to "keep your f*cking distance."

     e.     it is impermissibly and substantially facially overbroad in relation to its plain legitimate sweep because, for example, it purportedly permits state actors to ban speech.

**RESPONSE**: Answering Paragraph 154 e of Plaintiff's Complaint, Defendants are not required to answer a statement of law unrelated to the facts of this case but nevertheless deny that the facts of this case demonstrate any violation of the law.  Defendants aver that Plaintiff has no right to call students or administrators c*cksuckers or to tell students to "f*ck you" or to "keep your f*cking distance."

155.    As a direct and proximate result of the unconstitutional aspects of the ESD as well as Defendants' application thereof against Plaintiff, all as referenced herein, Plaintiff, as well as his current and former students and colleagues, and anyone wishing to associate with his speech and academic lessons, have suffered and will continue to suffer irreparable injuries including, but not limited to, loss of First Amendment-protected speech, academic freedom, and association rights.

**RESPONSE**: Answering Paragraph 155 of Plaintiff's Complaint, Defendants deny as untrue the allegations contained therein and leave Plaintiff to his proofs.

156.    Under this Cause of Action, Plaintiff seeks nominal, compensatory, special, and punitive damages against Defendants Eisler and Cagle for their violations of the constitutional rights of Plaintiff, Plaintiff's current and former students and colleagues, and anyone wishing to associate with Plaintiff's speech and academic lessons.

**RESPONSE**: Answering Paragraph 156 of Plaintiff's Complaint, Defendants deny that any of Plaintiff's rights have been violated or that he is entitled to any remedy under the law.

157.    Under this Cause of Action, Plaintiff also respectfully requests this Honorable Court declare that Defendants' actions in banning Dr. Mehler from FSU's campus; banning him from contact with current and former students and colleagues; and banning him from communicating with students to be unconstitutional as applied to Dr. Mehler.

**RESPONSE**: Answering Paragraph 157 of Plaintiff's Complaint, Defendants deny that any of Plaintiff's rights have been violated or that he is entitled to any remedy under the law.

158.    Further, under this Cause of Action, Plaintiff respectfully requests that this Honorable court enter an immediate Temporary Restraining Order followed by a preliminary and permanent injunction pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202, enjoining Defendants, as well as their officers, agents, employees, representatives, and assignees, from enforcing the Letter and from otherwise interfering with Plaintiff's free speech and academic freedom rights.

**RESPONSE**: Answering Paragraph 158 of Plaintiff's Complaint, Defendants deny that any of Plaintiff's rights have been violated or that he is entitled to any remedy under the law.

WHEREFORE, Defendants respectfully request that this case be dismissed in its entirety, that the Court award Defendants their costs and attorney fees because Plaintiff has filed a vexatious and non-meritorious case and for any other relief this Court deems reasonable.

## **AFFIRMATIVE AND OTHER DEFENSES**

In further answer to Plaintiff's Complaint, and by way of affirmative and other defenses, Defendants state that they will rely upon the following affirmative and other defenses, if applicable and if supported by facts to be determined by appropriate discovery:

1.      Plaintiff's claims should be dismissed in whole or in part because he failed to state a claim upon which relief can be granted.

2.      Plaintiff's claims are barred in whole or in part by the doctrines of waiver, estoppel, and laches.

3.      Defendants David Eisler and Randy Cagle acted in good faith in the performance of their official duties and are entitled to immunity for all actions taken toward Plaintiff.

4.      Plaintiff's claims are barred in whole or in part by immunity granted by law, including but not limited to, sovereign immunity, immunity granted by the 11th Amendment of the United States Constitution, absolute immunity, good faith immunity, qualified immunity, and governmental immunity.

5.      Ferris State University and the individual Defendants in their official capacities are not persons subject to suit under 42 U.S.C. § 1983.

6.      The Court lacks subject matter jurisdiction over some of Plaintiff's claims including but not limited to any claims against Ferris State University under 42 U.S.C. § 1983.

7.      The Court lacks subject matter jurisdiction over claims against the individual Defendants in their official capacities.

8.      Plaintiff has no free speech right to call students or administrators n*ggers, c*cksuckers or to tell them "f*ck you."

9.      Plaintiff's use of profanity was unnecessary and unrelated to any History lesson he was assigned to teach at FSU.

10.     Academic freedom is limited.

11.     The use of profanity in any class taught at FSU where students are required to hear it must be necessary because of the subject and directly related.

12.     Plaintiff being placed on paid administrative leave with full pay and benefits pending investigation when being represented by his Union and private counsel is not an adverse action.

13.     Plaintiff failed to exhaust his administrative remedies under his Union's Collective Bargaining Agreement before filing this action.

14.     Plaintiff's interest in discussing Covid-19 was a private matter

15.     University classes (whether virtual or in-person) are for enrolled students and are not public forums where free speech occurs.

16.     The decision to hold in-person classes had been made before January 9, 2022.

17.     The expression of private opinions by Plaintiff in classrooms at FSU is not free speech.

18.     Plaintiff's academic freedom does not give him the right to call FSU administrators and students n*ggers, c*cksuckers, or to tell them to "f*ck you."

19.     Plaintiff's interest in protecting himself and his wife from Covid-19 is a private matter.

20.     Any decision regarding Plaintiff's employment relationship was a reasonable exercise of business judgment, was made with justification and/or privilege and/or in good faith, and/or was for legitimate and/or non-pretextual motive.

21.     Plaintiff's claims for liability and/or damages may be barred in whole or in part, by after-acquired evidence including, but not limited to, information discovered subsequent to the employment actions at issue herein, or subsequent to the filing of Plaintiff's Complaint, including but not limited to evidence of misconduct, misrepresentation, unclean hands, malfeasance or other reasons.

22.     Plaintiff is not entitled to any monetary relief, either in the form of back pay, front pay or compensatory damages, due to his failure to properly mitigate his damages and his damages, if any, are subject to appropriate set-offs.

23.     Defendants reserve the right to add additional affirmative defenses as discovered in its continuing investigation and discovery.

WHEREFORE, Defendants pray that this Court dismisses Plaintiff's entire complaint with prejudice, awards Defendants their attorney fees, costs and fees for having to defend these meritless claims and grants such further and additional relief as justice and fairness require pursuant to 42 U.S.C. § 1988.

## JURY DEMAND

NOW COME Defendants, by and through their attorneys, Clark Hill PLC, and hereby rely on the jury demand filed by Plaintiff in the above-entitled cause of action and demand a trial by jury on all issues so triable.

Respectfully submitted,

CLARK HILL PLC

By:     s/Robert M. Vercruysse
        Robert M. Vercruysse (P21810)
        Anne-Marie Vercruysse Welch (P70035)
        Attorneys for Defendants
        500 Woodward Avenue, Suite 3500
        Detroit, MI  48226
        (313) 965-8325  (313) 309-6958
        rvercruysse@clarkhill.com
Dated:   February 14, 2022          awelch@clarkhill.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

By:     s/Robert M. Vercruysse
        Robert M. Vercruysse (P21810)
        Attorneys for above named Defendants
        500 Woodward Avenue, Suite 3500
        Detroit, MI  48226
        (313) 965-8325  (313) 309-6958
        rvercruysse@clarkhill.com

CLARKHILL\09225\437562\265795719.v1-2/14/22